Bay, J.
It is sought to reverse the judgment of the superior court at general term, for two reasons:
1. That the evidence did not warrant the findings of fact as shown by the record.
2. That the plaintiff below was not, in law, entitled to recover upon either the evidence or facts as found by the court.
The court, in,special term, rendered judgment against the plaintiff below upon the facts as found by the court; and, by his petition in error, he questioned only the law as held upon the. facts so found. Neither party was, in the court at general term, complaining of the findings of -fact at special term; nor are either, in this court, so far as the record shows, alleging any error of that kind. The only question directly presented by the record, is one of law upon the facts as found.
It is difficult to see upon what principle this court can, as the record stands, review the evidence; and — granting that the judgment in special term was unwarranted by the facts as found — proceed to what would be equivalent to a new finding of facts that would sustain the judgment. It can not be said, • that such a course would not be to the prejudice of the plaintiff below; for, had the findings been as desired of this court, he might have availed himself of his statutory rights for a new *565 trial; and, the findings being what they were, he had the right to rest, as the remedies, impeaching the findings, available to the other party could, at most, result only in a new trial.
The superior court at general term, holding the judgment in special term to be erroneous upon the facts as found, might properly look at the evidence upon which they were found, for the purpose of determining whether it would proceed to render the proper judgment upon the facts as found — as it doubtless might have done — or, instead thereof, grant a new trial. Conceding that the facts found by the court at special term were unwarranted by the evidence, the most that the Insurance Company could have asked of that court, was a new trial; and, surely, it could ask no more, at general term, upon the mere question of erroneous findings on the evidence.
Eor another reason, it would seem, the plaintiff is not .entitled to a review of the evidence to impeach the findings of the court below; for, .it has long been held, that a motion for a new trial must be filed and overruled below, before that can be done. It is true that the defendant below moved to set aside the findings, and for a re-hearing. This motion may fairly be construed as asking leave only for a re-argument upon the evidence then before the court, and not for a new trial; but, if it be regarded as a motion for a new trial, it has been granted in general term; and, thus, the findings complained of have been set aside, and the plaintiff in error is no longer prejudiced by the ruling on the motion in special term.
The holding of this court in the cases of Spafford v. Bradley, 20 Ohio Rep. 74; and Beatty v. Hatcher, 13 Ohio St. Rep. 115, on this point, are clear and decisive against the plaintiff in error.
Did the superior court, at general term, err in reversing the judgment rendered at special term, in favor of the defendant below, upon the facts as found by the court? ■ ^
This is the main proposition, affecting the substantial rights of the parties, and its determination is not without difficulty. The authorities upon some of the questions involved in its solution are not entirely harmonious. General principles are, *566 however, settled by them, upon which, as well as upon authority, this case may be satisfactorily determined.
The goods mentioned in the policy were stowed on deck, and jettisoned on the voyage. The terms of the policy are broad enough to cover the loss. But it is claimed, goods carried on deck are not ordinarily protected. Undoubtedly such has long been the general rule; and, it is equally clear, that its origin was based upon'a general usage, not to carry goods on deck. This rule of marine insurance is the result of a general principle of mercantile law, applicable to any contract made with reference to a known usage, that the custom to which it relates becomes a part of the contract. Arn. Ins., sec. 42, and numerous authorities cited in Perkins’ edition; 1 Phil. Ins., sec. 133; Renner v. Bank of Columbia, 9 Wheat. 581.
It follows that policies are to be construed with reference to the usages to which they relate. Arn. Ins., sec. 41; Phil. Ins., sec. 132.
These principles tend to harmonize the course of decisions, and their apparent confusion may be found to rest more in the changing usages of navigation and trade, than in any lack of certainty or stability in the principles of law.
The general rule before referred to, was based on the usages adopted in the navigation of ordinary sailing-vessels; and the reason assigned for the usage, not to stow goods on deck, and the rule founded thereon, is, that goods so carried are exposed to greater peril, and enhance the difficulties of navigation, and consequent danger to the ship and cargo., How far a rule of law, based upon a usage of ordinary sailing craft, may be applicable to, or binding upon, vessels propelled and governed by steam, is worthy of consideration. If the latter are so constructed and governed, that the reason for the usage of the former fails and the usage ceases, it would seem that the general rule should be so far modified as to make that class of vessels an exception. However that may be, it can not be doubted that, upon principle, where the mode of navigation, or the custom of a particular trade, is such that no usage of the kind, *567 upon which the general rule is based, obtains, and that is within the knowledge of 'the parties, théir contracts made in relation to such navigation or trade, are presumed to be made with, reference thereto, and are not modified by a usage that has no connection with the subject matter of the contract. Nor would this be inconsistent Avith the general rule, as stated by the American editor of the exchequer reports, in a recent note to 6 Hur. & Nor. Rep. 288, based upon numerous American authorities cited, that: “In the absence of any contract, express or implied, from some particular custom of trade or navigation, it is settled that the loss or jettison of goods carried on deck, creates no claim upon insurers or for general average on the rest of the cargo.” Mr.-Phillips, in his treatise, makes substantially the same statement of the rule. Sec. 460.
But the chief difficulties upon which the authorities most differ, arise Avhere the policy merely names the article, and it is such as is sometimes carried on deok, and sometimes under, andas to the extent proof is admissible in relation’ to particular usages, or the character and extent thereof.
In analogy to the general principles before referred to, it would seem that, if the goods covered by the policy are to be carried on a vessel so constructed, propelled and managed, that goods may be as properly and safely stowed above as below deck, or if the description of the voyage, or character of the goods be -such, that the underwriter may be presumed to be apprised of a usage to carry them either upon or under deck, the policy will attach to them when so carried. This proposition is substantially what Mr. Phillips, in the section before cited, amidst conflicting authorities, considered to be the result of established principles; and the later decisions support, and tend to settle, that as the correct rule of Iuav.
A leading English case is that of Da Costa v. Edmunds, 4 Camp. 142. It Avas a suit on a policy covering “40 carboys of vitriol,” from London to Lisbon'. “ These carboys were placed on the deck, and carefully lashed to the ship’s side. A storm arose during the voyage; and a heavy sea having broken several of the carboys, the vitriol caught fire, and, for the pres *568 ervation of the ship, it was necessary to throw the whole overboard. The ship and the rest of the cargo arrived safe at Lisbon. It appeared that carboys of vitriol are very frequently carried on the decks of ships; but that it is likewise usual to stow them below, bedded in sand, in which situation they are considered safer. Lord Ellenborough left it to the jury to say whether it was usual to carry vitriol on the deck, and whether •these carboys were properly stowed. If there was a usage to carry vitriol on deck, the underwriters were bound to take notice of it without any communication, and all they could require was that these carboys should be properly stowed in the usual manner. On the other hand, they were not liable if the goods were carried on the deck without such a usage, or if they were not stowed there in a skillful and proper manner. The jury found for the plaintiff; and the court, in the ensuing term, refused a rule to show cause why there should not be a new trial.”
The same principle is recognized in the case of Gould v. Oliver, 4 Bing. New Cases, 134.
Hurley v. Milward, 1 Jones & Carey, 224, in the court of exchequer for Ireland, at Easter term, 1839, was an action for general average, against.the owner of a sieam-vessel, by the owner of certain pigs which had been thrown overboard in a storm. “ It appeared in evidence that the plaintiff had, in February, 1838, shipped onboard the Kilkenny steamer 234 pigs, to be conveyed from Waterford to Bristol; that there was not room for them below, and that they were therefore stowed upon the deck; that pigs were sometimes carried on the deck, and at other times below, under the hatcher, according to the captain’s orders; that the captain regulated the situation of the pigs; and that the charge for freightj in either case, was the same. The custom was'to ship on deck, or below, according to the captain’s directions.” . In answer to an assertion of the defendant’s counsel, that, “according to every maritime code in Europe, property stowed upon deck is not the subject of general average;” Mr. Baron Pennefather said: “ That is a proposition laid down with respect to sailing-vessels. The *569 reason of it is that goods stowed on deck obstruct the mariners in the navigation of the vessel. In a steam-vessel, plying from port to port, that reason does not apply. Those vessels are fitted up for a peculiar description of trade, and carry a large portion of their cargo on deck; and the evidence is that the cargo is stowed according to the directions of the captain.”
The owners of the Kilkenny steamer mentioned in the case of Hurley v. Milward, before cited, brought an action against the insurers of the hull, stores, and machinery, to recover their share of the loss of the pigs which they had contributed to general average. The defendant pleaded that the pigs had been placed on deck, and a custom to carry them on deck was replied, to which the defendant demurred. Lord Denman delivered the opinion in 1842, and affirmed the doctrine of Da Costa v. Edmunds, and Could v. Oliver. He says: “We have already shown that the law of England has stopped very short of the doctrine that no owner of goods stowed on deck shall, under any circumstances, be allowed to recover contribution on general average. The question between the merchant and ship-owner may be different from that between either of them and the underwriters; because the former may agree to stow the goods in such a manner that the latter will not be at all responsible for their loss. But it seems to the court, for the reasons assigned, that the mere fact of stowing them on deck will not relieve the underwriter from responsibility ; inasmuch as they may be placed there according to the usage of the trade, and so as not to impede the navigation or in any way increase the risk.” Milward v. Hibbert, 3 Queen’s Bench, 120; 2 Gale & Davis, 142.
This case, as well as that of Gould v. Oliver, is referred to and apj roved in a case decided in the superior court of the city of New York, in 1859; and, although not a,court of last resort, is one, of necessity, familiar with commercial questions. Upon a full consideration in general term it held: “ That jettisoned goods carried on deck, according to the custom of the trade, by steamboats navigating the Sound that separates Long Island from the main land of New York and Connecticut, and *570 stowed in the usual way, are entitled to contribution for general average loss.” In the opinion delivered by Judge Pierrepont, it is said that: “ The old rule was established when all vessels were propelled by sails, and when there was no machinery in the hold of the ship; but the introduction of steam into marine service has wrought great changes in the situation of the motive power, and has rendered the steamboat deck the fitter place for the stowage of cargo. The reason of the rule has ceased, and the rule should perish with the reason.” Harris v. Moody, 4 Bos. Rep. 210.
The case of Gillett v. Ellis, 11 Ill. 579, is another case in which the same principles are recognized. It was decided in 1850, and was brought to recover (on one count) of the owners of the boat their general average of jettisoned goods. The boat was a propeller, and the goods were stowed between the hatches on the main deck. The chief justice, in the opinion, says that: “ Propellers are double-decked vessels, and goods placed between the main and hurricane decks are considered as safe as those stowed in the hold — are, in fact, regarded as under hatches. It is the general custom on the lakes, in reference to this class of vessels, to stow the cargo indiscriminately in the hold and on the main deck, as best suits the convenience of the master. In this respect, no distinction is made in the rates of carriage and insurance. It is insisted that the plaintiff can not claim contribution, because his goods were stowed on the deck of the vessel. The general rule undoubtedly is, that he is not entitled to the benefit of a general average. The cargo on deck of a ship, from its situation, increases the difficulty of navigating the ship, and is no more exposed to peril than that which is under cover; and, if swept away or cast overboard, the owner must bear the loss, without contribution from the owners of the vessel and the cargo under hatches. But this case does not fall within the general rule. Propellers are a class of vessels but recently introduced in the navigation of the lakes, to which, from the peculiarity of their construction, and the general usage respecting them, the general rule is not appli *571 cable. The universal usage, resulting from the character of the vessel, must govern the rights and liabilities of the owners of the vessel and cargo. The owner of goods, which are stowed on the main deck of a propeller, and necessarily cast overboard by the direction of the master, to preserve the vessel and crew, is, therefore, entitled to the benefit of general average, as much as the owner of goods that are stowed in the hold would be, under like circumstances.”
The court, in the case of the Toledo Ins. Co. v. Speares, 16 Ind. Rep. 52, while it recognizes the general rule on this subject, as fully adheres to the exception, and adopts a quotation from Arnould on Insurance, viz.: “ But the most important exception is that of goods carried on dech, which are not contributed for, if jettisoned, unless they are so carried according to common usage and the course of trade, on the voyage for which they were shipped. On proof of such usage they are contributed for, if jettisoned, like other goods; and no notice to the underwriters of the existence of such custom is necessary, in order to make them liable, they being bound to know the usage of theparticulartrade,” and the following authorities are cited, viz: “ Abbott on Shipp., 6th Am. ed. 481 et seq. and notes; Brown v. Cornwell, 1 Root, 60; Milward v. Hibbert, 43 E. C. L. 659 ; 2 Arnould on Ins., 888, 890, and'cases there cited.” It will be seen, that Milward v. Hibbert is again cited as a leading case.
The holding in the case just cited from the Indiana Reports, that the underwriter is presumed to have notice of the usages of the trade, in reference to which he contracts, is supported by authority both English and American.
Lord Mansfield, in the case of Pelly v. Royal Ex. Ass. Co., 1 Burrows, 341, says : “ The insurer, in estimating the price at which he is willing to indemnify the trader against all risques, must have under consideration the nature of the voyage to be. performed and usual course and manner of doing it. Every thing done in the usual course, must have been foreseen, and in contemplation, at the time he engaged.”
Again, in Noble v. Kennoway, 2 Doug. 510, he says: *572 “ Every underwriter is presumed to be acquainted with the practice of the trade' he insures; and that whether it is recently established or not. If he does not know it, he ought to inform himself.”
In the case of Macy v. Whaling, 9 Met. 354, in the opinion, the language of Mr. Starkie (2 Starkie’s Ev. 361-2) is adopted, viz: “ In an action on a policy of insurance, evidence is admissible to show the custom of a particular branch of trade; for every insurer is presumed to be acquainted with the practice of the trade in which he insures, although it has been but recently established.”
Although this doctrine would seem to be. well founded in reason and on authority, it is, nevertheless, unnecessary for us to determine, in this case, whether it is the true rule; for, upon the facts as found by the court-below, it may be fairly presumed, that the policy was made with reference to the line of steamers on which the goods specified in the policy were to be carried; and that the insurance company ha.d, or by the exercise of ordinary prudence might have had, notice of the usages of that particular trade. It follows, therefore, upon the principles above stated, that the policy, made with reference to that trade, embraces the established usages thereof, and that goods carried on dock in accordance with such usage, and jettisoned on the voyage, are within the provisions of the policy, and that the company are liable thereon for the loss.
Judgment of the superior court in general term affirmed.
Brinkerhoee, C.J., and Scott, White, and Welch, JJ., concurred.