## Case No. 3,592.

### DAVEY et al. v. The MARY FROST.

[2 Woods, 306.][1]

Circuit Court, E. D. Texas. May Term, 1876.[2]

SALVAGE SERVICES BY CITY FIREMEN.

The extinguishment of a fire in a ship lying at the wharf of a city, by its fire department, does not entitle the firemen to salvage, even though there is no city ordinance requiring them to extinguish fires.

[Cited in The Cherokee, 31 Fed. 170; Bowers v. The European, 44 Fed. 487; The Roanoke, 46 Fed. 300; Firemen's Charitable Ass'n v. Ross, 60 Fed. 459.]

[Compare The Huntsville, Case No. 6,916.]

[Appeal from the district court of the United States for the eastern district of Texas.]

This was an attempt of firemen to recover salvage of a vessel for extinguishing a fire which broke out in her while lying at the wharf of Galveston.

Geo. Flournoy and J. Z. H. Scott, for libellants, cited Spencer v. The Ch. Avery [Case No. 13,232]; The Tees, Lush. 505; 2 Pars. Shipp. & Adm. 277; Stevens v. S. W. Downs [Case No. 13,411]; Le Tigre [Id. 8,281],—and claimed that as there was no law or ordinance making it the duty of firemen to put out fires, they were entitled to salvage.

T. N. Waul, for claimants.

BRADLEY, Circuit Justice. This is a libel for salvage. The libellants state that on the

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[2] [Affirming Case No. 3,591.]

11th of January, 1876, the barkentine Mary Frost was moored at a wharf in Galveston taking in cargo, and already had on board and closely stowed in the hold about 800 bales of cotton; that about 9 o'clock in the evening an alarm of fire was sounded throughout the city and port, and in response thereto the libellants went immediately to the wharf to which the vessel was moored and discovered flames and smoke issuing from her hold and cabin, and that she and her cargo were on fire; that the libellant Davey (who it appears was chief engineer of the fire department of the city of Galveston) called for the master of the vessel and asked him if he could manage the fire; that he answered he could not, and requested Davey to take control and save the vessel; that libellants and their assistants took control of the vessel, and, by means of fire engines and the assistance of firemen present and working under the direction of libellants, proceeded to extinguish the flames, and poured water into the vessel until her burning part sank and became submerged, and the fire became wholly extinct, and the vessel finally rested on the bottom; that the libellants and their assistants remained in charge for the purpose of raising the vessel again, and on the following day procured a steam tug and a barge with which they conveyed an engine alongside and pumped the water out of the vessel, and raised her. The libel goes on to state that the night was cold and that the libellants were subject to great labor and fatigue in saving the vessel. Wherefore they demand salvage. The answer of the master admits the fact of the fire, and the assistance given by the libellants in extinguishing it. He says, that he had obtained assistance from a vessel lying near, and, with a force pump, was keeping the fire in check, when Davey and others, wearing the uniform of the fire department, came to the wharf with fire engines and a company of firemen. He denies that he gave up the command of the ship to Davey, and says that Davey took no other charge than as an officer of the fire department; and that he and those assisting him represented themselves as firemen, and that they extinguished the fire by means of fire engines that belonged to the city of Galveston. He says that the depth of water was only thirteen feet, and that it was not necessary to submerge the vessel, and that she only settled in the water to her deck. He says that he did not need the assistance of any other persons than his crew to pump the water out of the ship on the following day, and that he was actually pumping it out with his own pumps when the libellants came on board and insisted upon pumping out the water; and that he informed them that their services were neither needed nor desired; but that they forcibly proceeded to pump out the water contrary to his express

directions. He insists that the libellants belonged to the fire department of Galveston, and that in rendering the assistance they did, they were acting in the strict line of their duty, and are not entitled to any salvage. I have read the evidence, and find that the statements of the claimant are mainly true. Some of the libellants were not firemen; but all acted under the orders and directions of the chief engineer. There are always volunteer helpers at fires. It is an instinct of every good citizen to do all he can to suppress a fire. But the fact that some who were not enrolled in the service aided in putting out the fire does not detract from the truth of the general proposition, that the fire department extinguished this fire. The services of the department were not required on the second day in pumping out the ship; and they were expressly told so. But it seems that the idea of the salvage must have already possessed them, and that they insisted on pumping out the vessel.

I cannot regard this case as any other than the extinguishment of a fire in a ship lying at the wharf of Galveston by the aid of the fire department of that city. The question is, whether it is a case for salvage. In my opinion, it is not. The firemen were merely engaged in the line of their duty. They only did what it was their duty to do. If they did more, it was services that were not necessary, and not required, but expressly declined.

It is said, however, that there is no duty imposed on the fire department of Galveston at all; that there was once an ordinance declaring such duty, but it had been repealed. No duty imposed on a man who unites with a municipal organization, whose only object is to extinguish fires; who wears the uniform of the department; who is supplied with engines, and ladders, and hose, and horses and all the apparatus for extinguishing fires? Do the citizens of Galveston, who furnish this apparatus, understand that the firemen are subject to no duty? The idea is preposterous. Duty does not always arise from express commands It often arises from implied obligations quite as strong as those which are most clearly expressed. It needs no law nor ordinance to make it the duty of firemen to put out fires. Is there any express law that declares it to be the duty of a soldier to kill or capture his enemy in battle? His very profession makes it his duty. So does the profession of a fireman make it his duty to do his utmost to extinguish a fire anywhere in the city. The attempt to make the performance of this duty a ground of salvage, when it is a ship that takes fire, is against wise policy. Are ships going to frequent a port where they are subject to salvage if they take fire and are aided in its suppression by the local fire department—the origin of the fire due, perhaps to a fire in the city itself? The city

authorities of Galveston did well to repudiate the claim in this case, as the record shows they did; and it is to be hoped that the fire department will not tarnish the luster which its noble sacrifices have justly earned for it, by repeating a demand of this kind. Libel dismissed.