## THE "ANNIE LINDSLEY."

1. Under the act of Feb. 16, 1875, c. 77 (18 Stat., pt. 3, p. 315), the finding of facts by the Circuit Court in admiralty cases is conclusive.
2. A brig and a schooner were approaching each other nearly end on, on courses involving risk of collision. The schooner put her helm to port. The brig put her helm to starboard, thereby violating rule 16 prescribed by sect. 4233 of the Revised Statutes, and causing a collision. *Held*, that the brig was liable.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

On the night of May 7, 1869, a collision which occurred in Long Island Sound between the brig "Annie Lindsley" and the schooner "Sallie Smith" resulted in the sinking and total loss of the schooner and her cargo. The owners of the schooner brought suit against the brig to recover the damages sustained by them in consequence of the collision, and the District Court having rendered a decree in their favor, the claimant of the brig appealed to the Circuit Court, by which, on July 10, 1878, the decree was affirmed. The claimant then appealed to this court.

The Circuit Court made the following finding of facts : —

"1. About half-past eight o'clock on the evening of May 7, 1869, the brig 'Annie Lindsley' collided with and sunk the schooner 'Sallie Smith,' in Long Island Sound, between two and three miles north and east of Eaton's Neck. The sky was overcast and there was a little rain, but no mist or fog, though it was quite dark. The wind was fresh and east of south. Its precise direction is not satisfactorily shown. The water was not rough.

"2. The schooner, of 96 tons new measurement and 106 old, was bound from Connecticut River to New York, with a cargo of brown stone and scrap iron. When the brig was first discovered by those on board the schooner she (the schooner) was heading on her regular course through the Sound, which was W. by S., and had her port tacks aboard. Her regulation lights were set and burning brightly. Her mate was at the wheel, and a competent lookout at his post on deck forward of the windlass.

"3. The 'Annie Lindsley,' a brigantine of 220 tons British measurement, was bound east from New York to Hillsborough, New Brunswick, in ballast. She was steering by the wind and not by the compass, and was heading as near on her course through the Sound as the wind would permit. Her general direction was about E. N. E., which was a little to the northward of her regular course. Her master was on deck, the second mate at the wheel, and one man forward, properly stationed as a lookout. Her regulation lights were set, and she had her starboard tacks aboard.

"4. Both vessels were sailing under full canvas.

"5. When the brig was discovered from the schooner, the two vessels were approaching each other end on, or nearly end on, and on courses involving the risk of collision. The brig was close-hauled. The schooner had the wind a little free.

"6. A short time before the collision the lookout on the schooner discovered the brig about dead ahead. He saw no lights, but made out the vessel and her sails coming, as he judged, from an opposite direction. He at once reported to the man at the wheel, who put the wheel to port and bore off, until he opened the red light on the brig.

"7. The schooner was not discovered from the brig until after the brig was discovered from the schooner. The lookout was the first to see the schooner from the brig, and he called out 'Light right ahead.' Almost at the same moment a hail was heard from the schooner. The brig's wheel was then put to starboard, and she swung off one point. As soon as this movement could be discovered, another hail came from the schooner to luff, and the wheel was put to port, but before it could materially affect the course of the brig the two vessels came together, the brig striking the schooner on the port quarter, the jib-boom of the brig passing through the mainsail of the schooner. The schooner sank in a very few minutes with her cargo, and was a total loss.

"8. The starboarding of the brig was the direct cause of the collision.

"9. The value of the schooner at the time she was lost was five thousand dollars."

And, as conclusions of law from the findings of fact, the court declared that, —

1. The brig was in fault for putting her wheel to starboard, and this was the cause of the collision.

2. The libellants are entitled to a decree for the value of the schooner, cargo, and freight, as reported by the commissioner, with interest at six per cent from May 7, 1869, the date of the loss.

A decree was entered accordingly.

Upon the trial the claimant asked the court to make thirteen findings of fact, and to deduce therefrom certain conclusions of law.

The court declined to find the facts and conclusions of law as requested by claimant.

*Mr. Robert D. Benedict* for the appellant.

*Mr. Wilhelmus Mynderse,* contra.

MR. JUSTICE WOODS, after stating the case, delivered the opinion of the court.

The assignments of error, which are sixteen in number, may be fairly condensed as follows : —

1. The court erred in refusing to find the facts as requested by the claimant.

2. The court erred in refusing to find the conclusions of law as requested by the claimant.

3. The court erred in certain of its findings of fact.

4. The court erred in finding as matter of law that the brig was in fault for putting her wheel to starboard.

5. The court erred in finding as matter of law that the libellants were entitled to a decree.

The first and third assignments are disposed of by *The Abbotsford* (98 U. S. 440), and *The Benefactor*, 102 id. 214. In these cases it was held that, under the act of Feb. 16, 1875, c. 77, entitled " An Act to facilitate the disposition of cases in the Supreme Court of the United States, and for other purposes " (18 Stat., pt. 3, p. 315), the finding of facts by the Circuit Court in admiralty is conclusive. Upon an appeal from a decree in admiralty rendered since May 1, 1875, when the act went into effect, we cannot look into the evidence, or the

opinion of the court, to ascertain the facts. The evidence is
not properly in the record, and, by an amendment to rule 8,
promulgated May 2, 1881, it is excluded from the transcript.
*The Adriatic,* 103 U. S. 730. Where the Circuit Court has
passed on all the issues, we cannot listen to complaints that
it has refused to find certain facts which it was asked to find,
or has found certain other facts which the weight of the tes-
timony did not warrant.

This disposes, also, of the second ground of error, as the
conclusions of law which the court was asked to declare were
based on the findings of fact proposed by the claimant, which
the Circuit Court refused to adopt.

The question, and the only question which we can consider,
is, whether the facts found support the conclusions of law and
the decree, and it is raised by the fourth and fifth assignments.

The Circuit Court finds, in its conclusions of fact and of law,
that putting the brig's helm to starboard was the cause of the
collision. It also finds, as a conclusion of law, that the brig
was in fault for putting her wheel to starboard.

We are required, therefore, to consider whether the brig,
under the facts found, was so in fault.

From the findings it appears that the wind was east of south;
that the schooner, just before the collision, was heading west
by south, bound from the Connecticut River to New York, and
had her port tacks on board. The brig was bound east from
New York to New Brunswick. She was steering by the wind;
her general direction was east-northeast. Both vessels were
sailing under full canvas, and both had their regulation lights
set.

Immediately before the collision the brig was sailing close-
hauled to the wind, the schooner had the wind a little free.
When the brig was discovered from the schooner, the two ves-
sels were approaching each other end on, or nearly end on, so
as to involve the risk of collision. A short time before the
collision the lookout on the schooner discovered the brig dead
ahead. Her wheel was at once put to port, and she bore off.
The schooner was not discovered by the brig until the brig had
been discovered by the schooner. The lookout was the first
to see the schooner from the brig, and called out "Light right

ahead." The brig's wheel was then put to starboard, and she swung off one point. On being hailed from the schooner and told to luff, the wheel was put to port; but before it could materially affect the course of the brig, the two vessels came together.

The duty of the vessels in the emergency preceding the collision is plainly prescribed by the sixteenth rule for the prevention of collisions on water, which is as follows : " If two sail vessels are meeting end on, or nearly end on, so as to involve risk of collision, the helms of both shall be put to port, so that each may pass on the port side of the other." Rev. Stat., sect. 4233.

We have seen that the vessels were approaching each other end on, or nearly end on, so as to involve risk of collision. The rule under such circumstances required them to port their wheels, and pass each other on the port side. The brig, in violation of the rule, instead of porting her helm, put it to starboard. The court found as a matter of fact that this was the direct cause of the collision, and as a conclusion of law, that she was in fault for so doing. We think that from the finding the conclusion inevitably follows.

The counsel for the appellant, however, insists that the conclusion amounts to laying down this rule : that a vessel close-hauled on the starboard tack seeing a light right ahead is in fault if she starboards ; and he argues that the rule thus stated is too broad, and that whether a vessel is in fault for starboarding on seeing a light right ahead depends upon what the light is, that is to say, whether it is green or red. He insists that if the light seen by the brig upon the schooner just before the collision was green, that this fact made it the duty of the brig to starboard and not to port her helm. In support of this view he cites Jenkins's Rule of the Road at Sea, pp. 44, 124, 125, 127, 129, 135, 208, and other authorities.

He then goes on to argue from the testimony that the light seen by the brig was green. As we have already shown, we have nothing to do with the testimony. We are limited strictly to the findings of fact, so that the point presented by his contention is whether, upon the facts found, the rule of navigation was too broadly stated by the court. The answer

is, therefore, plain. The court did not find that the light seen by the brig was a green light, and did find that the vessels were approaching each other end on, or nearly end on, so as to involve the risk of a collision. The situation as found by the court was, therefore, precisely the one provided for in the sixteenth rule, which it was the duty of the brig to obey by putting her helm to port. The rule to be deduced from the conclusion of law drawn by the court from the facts found is not a whit broader than the sixteenth rule itself, and is really only a repetition of that rule.

The effort of the appellant seems to be to bring the case within the provision of the twenty-fourth sailing rule, which declares that, " in construing and obeying these rules due regard must be had to all dangers of navigation, and to any special circumstances which may exist in any particular case, rendering a departure from them necessary in order to avoid immediate danger." Rev. Stat., sect. 4233.

The findings, however, having brought the case clearly within the sixteenth rule, if there were any additional facts which took it out of that rule and brought it within the operation of the twenty-fourth rule, it was incumbent on the appellant to establish them and have them incorporated with the findings. The burden of proof was on him to show some special circumstances which made his case an exception to the sixteenth rule.

But there is no finding that the light seen on the schooner by the brig just before the collision was a green light.

On the contrary, the record shows that the court, although explicitly asked by the appellant to find that the light seen was a green light, refused to make such finding. Nor is there any finding from which it can be fairly inferred that both of the schooner's lights were not seen by the brig just before the collision. The appellant has, therefore, failed to show any fact which takes his case out of the operation of the sixteenth rule, and makes the twenty-fourth rule applicable.

The appellant next contends that the findings of the Circuit Court do not show that the schooner kept a good and proper lookout. The court found that she had a competent lookout at his post, on deck, forward of the windlass, but the appellant

says that the fact that the lookout did not discover the lights of the brig until just before the collision shows that he was not vigilant in the performance of his duty.

It would seem that the finding of the court in reference to the lookout did not leave any ground for the appellant to stand on. If the lookout was competent, and at his proper post, the presumption of law that he did his duty, is not, we think, overcome by the fact that he did not see the lights of the brig until just before the collision. The brig also, according to the findings, had a man forward, properly stationed as a lookout, and he did not see the lights of the schooner until the collision was imminent. The fact that the lookout on each vessel failed to see the lights of the other shows that the state of the weather, or some other obstacle, prevented them from being seen at the usual distance. But the court distinctly found that the cause of the collision was the fault of the brig in putting her helm to starboard. That fully accounts for the disaster. Neglect of the lookout does not appear from the findings to have had any part in bringing it about. It would be against all reason to hold that the owners of a vessel whose lookout was shown to be negligent should be made liable for the consequences of a collision, when his neglect had nothing to do in causing it. *The Farragut*, 10 Wall. 334, *The Fannie*, 11 id. 238.

So far as the findings in regard to the lookout are concerned, there is nothing in them to show that the decree of the Circuit Court is not just.

The appellant has raised other points resting wholly or in part upon a denial of the truth of the facts found, or upon alleged facts not found, but which he claims the evidence establishes. It is, therefore, not necessary to consider them. Our duty is to decide whether the findings, actually made by the court, support its conclusions of law and the decree, and there our duty ends.

*Decree affirmed.*