WAMSUTTA MILLS *vs.* OLD COLONY STEAMBOAT COMPANY.

Suffolk.  Nov. 19, 1883. — Sept. 5, 1884.  C. ALLEN & HOLMES, JJ.,
absent.

If a fire in a vessel lying at a wharf in a city is extinguished by members of the
fire department of the city, acting wholly under its municipal authority, and
not under the direction or at the request of the master of the vessel, there is
not a general average loss to which the cargo saved is liable to contribute.

TORT, with a count in contract, for the defendant's neglect
to make a general average adjustment after an alleged general
average loss, caused by the means used to extinguish a fire on
board the defendant's steamship, the Albatross.  Trial in the
Superior Court, before *Brigham*, C. J., who reported the case for
the determination of this court, in substance as follows:

On April 17, 1881, the Albatross arrived at New Bedford
from New York, with a cargo consigned to one hundred and
twenty-nine different persons.  In the evening of that day,
while she lay at a wharf near other vessels, and near build-
ings, a fire broke out in her hold.  The attention of the chief
engineer of the fire department of New Bedford was called to
the fire by a police officer, and he went to the steamship with
firemen and fire engines; and without any orders or directions
from, or conference with, the officer in charge of the vessel,
but acting entirely on his own judgment, he ordered holes to
be cut in the vessel, through which water was poured by the
fire engines until the vessel sank.  The mate in charge and
the crew of the vessel were present, but rendered no assist-
ance in extinguishing the fire; and no objection was made to
the use of the water by the mate, or by the master when
he arrived; and what was done was necessary to extinguish
the fire, which, if allowed to burn, would have set fire to the
wharf and the buildings upon it; and the vessels lying at the
wharf and the adjacent buildings would have been in peril.
The chief engineer did not know what the vessel was loaded
with, and made no selection of any property to be destroyed
in order to save the rest.  The plaintiff had on the vessel one
hundred and eighty-eight bales of cotton, forty-three of which,
together with a small portion of the other cargo, had been

landed on the wharf when the fire broke out. The bales which were on the vessel were damaged, some by the fire, and some wholly by the water poured into the vessel by the fire department. The defendant's officers, not considering the loss to be a case of general average, delivered the cargo to the consignees without taking a bond or security, and without ascertaining its value or condition.

The judge, upon the defendant's motion, ruled that there was no evidence to justify a verdict for the plaintiff; and directed the jury to return a verdict for the defendant.

If the ruling was correct, judgment was to be entered on the verdict; otherwise, the case to stand for trial.

*C. T. Russell & C. T. Russell, Jr.*, for the plaintiff.

*J. H. Benton, Jr.*, for the defendant.

FIELD, J. We express no opinion whether, if this be a general average loss, an action can be maintained for the negligence alleged in the declaration. It has been judicially decided that such an action can be maintained in *Crooks* v. *Allan*, 5 Q. B. D. 38, and in *Gillett* v. *Ellis*, 11 Ill. 579; but the decision in *Crooks* v. *Allan* is by a single justice, and no cases are cited in the opinion. We find it unnecessary to determine whether these cases ought to be followed, or to decide what the rule of damages is if an action lies.

The gist of the action is negligence in delivering the cargo without an adjustment of the loss as a general average loss, and without taking security for the payment of the contributive shares. The fundamental question is, Was this a general average loss? Although the steamship was at her wharf, the maritime adventure was not at an end; the ship was still bound to the cargo for its safe delivery; and the cotton, on account of which the suit has been brought, was undischarged.

It must be considered that it is now established that damage to unburnt portions of the cargo, caused by water intentionally used to extinguish a fire in a ship, is of the nature of a general average loss. *Whitecross Wire Co.* v. *Savill*, 8 Q. B. D. 653. *Nelson* v. *Belmont*, 21 N. Y. 36, and 5 Duer, 310. *Nimick* v. *Holmes*, 25 Penn. St. 366. *Gregory* v. *Orrall*, 8 Fed. Rep. 287.

The defence is, that the fire was extinguished, not by the master or by any person in charge of the steamship or her

cargo, but by the chief engineer of the fire department of the city of New Bedford, under his authority to extinguish fires within the city; and that it was necessary to do what he did, not only for the purpose of saving the ship and cargo, but for preventing the spread of the fire to buildings and other property in the city.

The right to extinguish fires in the city of New Bedford is a part of the police power of the Commonwealth. It may be exercised not only without the consent of the owner of the property on fire, but against his will. No one has a right to have his property burn, if thereby the property of others is endangered. Fire departments are established for the efficient suppression of dangerous fires, and the chief engineer is the head of the department, and his authority extends over all property within the municipality, the burning of which is dangerous. In taking possession of property for the purpose of extinguishing a fire that threatens to spread to other property, the chief engineer does not act as agent of the owner, but under a paramount right.

If indeed the fire does not endanger the property of others, he may act merely as the agent of the owner; but, if the safety of other property is imperilled, he must act under his public responsibility. If persons are employed to render a service, the service is paid for by those who employ them, but the members of a fire department in the ordinary performance of their duties are public officers, and are paid by the municipality. It is clear, in the case at bar, that the chief engineer and his men were not employed to extinguish the fire by any person lawfully in charge of the steamship; but that they acted wholly under their public employment. Although what they did was done without objection by the mate, or by the master after he arrived, yet they did not act under the direction of either master or mate. Suppose the chief engineer had brought a libel against the steamship and cargo for salvage, could he have maintained it for services in putting out the fire, without regard to his services in pumping out the steamer after she sank? We think not. *The Mary Frost,* 2 Woods, 306.

To constitute a general average loss, there must be an intentional sacrifice of a part of the property for the purpose of

saving the remainder from a common peril, or extraordinary expenditures must be incurred for the purpose of saving the property in peril. The authority to determine when a sacrifice shall be made, and what property shall be sacrificed, rests with the master, or other person lawfully in command of the ship. His right to sacrifice the property of other persons than the ship-owner is derived from necessity, whereby in circumstances of great peril he becomes the agent of all persons whose property in the common adventure is in peril. If this property is injured or destroyed by strangers to the ship and cargo, who are not employed by the master, or other person in command, it is not a general average loss. This is evident if the act of the strangers is a tort; but we do not see that it makes any difference in principle, if the act of the stranger is justifiable on the ground of a public or paramount right.

The distinction between a fire put out by the authority of the master, or other person in command, and one put out by public authority, without regard to the will of the master, we think, is sound.

When a ship has been brought to a wharf, so far as it has become subject to municipal control, if that control is exercised, we think that it stands no differently from any other property within the municipality, over which the same control has been exercised; and that the general maritime law does not govern the reciprocal rights and obligations of the parties to the maritime adventure, so far as the consequences of this control are concerned, but that they are to be determined by municipal law.

In *Nimick* v. *Holmes*, *ubi supra*, so far as appears, the fire was extinguished by the officers and crew of the steamboat.

In *Gregory* v. *Orrall*, *ubi supra*, the fire was extinguished by salvors, probably under the direction of the master.

In *Nelson* v. *Belmont*, *ubi supra*, the fire engines of the city of Charleston were employed by the master, and the sum of $5198 was allowed in the adjustment to the fire-engine companies for their services. The services must have been regarded as in the nature of salvage services.

In *Whitecross Wire Co.* v. *Savill*, *ubi supra*, the fire was extinguished by the master.          *Judgment on the verdict.*