## The Algiers.[1]

### (Circuit Court, E. D. Pennsylvania. April 15, 1886.)

COLLISION—NEGLIGENCE.

The steamer Algiers and the schooner William J. White were sailing on convergent courses. The steamer's was N. N. E.; the schooner's N. W., or somewhat to the northward of that. The steamer's head-light and signal lights were set, and burning brightly. The officers and seamen were on the lookout and watchful. The schooner's side lights were burning brightly, but were set in the curve of her bow, and did not throw her light abaft the beam. Her binnacle was on the top of the cabin, and a white light therein was visible, within an arc of 22 deg. 3 min. to a vessel off her port quarter. The first mate and two seamen were on duty, one of them at the lookout. The schooner's side lights were seen by no one on board the steamer. A white one, however, was seen. The steamer's lights were seen by those on the schooner for a long time before the collision, but no precautions were taken to attract her attention. A torch kept for that very purpose was not lighted. The schooner was not noticed until too late to avoid a collision. *Held* that, having proved vigilance, negligence could not be inferred from failure to see a light, and that the schooner was in positive fault in failing to light.and exhibit the torch, as the law required her to do, when she knew the steamer was approaching on a course which crossed her own.

In Admiralty.

*S. M. Thomas, H. R. Edmunds,* and *J. Warren Coulston,* for libelant.

*M. P. Henry* and *Edward McCarty,* for the Providence Washington Ins. Co.

*Curtis Tilton* and *Henry Flanders,* for respondent.

McKENNAN, J. The following facts are found as the result of the evidence:

(1) Shortly after midnight on the morning of the nineteenth of November, 1882, off the capes of the Delaware,.and from 20 to 30 miles southeastwardly from the Five Fathom Bank light-ship, a collision occurred between the schooner William J. White and the steam-ship Algiers, by which the schooner was sunk, and the vessel and cargo were a total loss.

(2) The night was dark, the moon had set, the sky was overcast, so that the stars could not be seen, and the wind was about N. N. E.

(3) The steamer was pursuing her voyage from New Orleans to New York at the rate of eight knots an hour, steering a course N. N. E., with the wind

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

ahead, her head-light and signal lights duly set, and burning brightly. Her officers and crew were properly stationed; the lookout was upon the bow, and watchful; the second officer was upon the bridge, looking for lights; the master was in the pilot-house, standing at the forward window close by, observing the progress of his ship; the quartermaster was at the helm, and two seamen were amid-ships awaiting call.

(4) The schooner was on a voyage from Alexandria, Virginia, to Providence, Rhode Island; her speed about four miles an hour. She was beating up the coast, close-hauled, on her starboard tack. She was in command of the first mate, and two seamen were on duty, one at the wheel, and the other at the lookout. Her course varied with the wind, but was N. W., or somewhat to the northward of that. Her side lights were burning brightly, but were set in the curve of her bow, and did not throw their light abaft the beam. Her binnacle was on the top of the cabin, and a white light therein was visible, within an arc of 22 deg. 3 min., to a vessel off her port quarter.

(5) The courses of the vessels were convergent, and at an angle more or less acute. The schooner's bearing was somewhat on the steamer's starboard bow, and the steamer was approaching on the port quarter of the schooner.

(6) The side lights of the schooner were not seen by the lookout on the steamer; or by her captain, who was in the pilot-house on the starboard side; or by her second officer, who was on the starboard side of the bridge,—both of which officers were looking through glasses in the general direction of the schooner's approach; nor by the two seamen, who were amid-ships, and were looking in the same direction; nor by the quartermaster at the wheel.

(7) The mast-head light of the steamer was seen continuously, for more than an hour before the collision, from the schooner. Afterwards the steamer's green light was seen by those on the schooner, and they knew that the steamer was approaching their course.

(8) The schooner had a torch on board, but no attempt was made to light it. When the collision was impending, and immediately before it occurred, a globe light was swung on the schooner, which was seen on the steamer, but it did not give her timely warning of the schooner's proximity.

(9) The steamer did not reduce her speed, or change her course; and, when the collision was imminent, her helm was put hard a-port, and an order given to stop and back her. The collision, however, occurred, by which the bow of the steamer was stove in, and she was considerably damaged, and the schooner was at once sunk.

Under the pressure of the respondent's proof, giving it its full weight, I think it is incontestable that neither the hull nor the light of the schooner were seen by any person on the steamer. But it is urged that this is overborne by the appellant's evidence that the schooner's lights were burning brightly, and hence that they ought to have been seen by the steamer, and that the impact upon the schooner was direct and perpendicular. If the steamer was not negligent, it is not necessary for her to show why the schooner's lights were not seen by her. It may be accounted for by imputing only a slight mistake to the schooner's witnesses touching her course. But the testimony for the steamer establishes that her lookout was faithful and dutiful, and that several other officers and persons on her deck were carefully observant in the direction of the schooner's approach, and that no lights were or could be seen, except a white light, which they afterwards believed to be a misleading light in the schooner's binnacle. Whether this be so or

not is not necessary to determine. Its chief significance is in showing the vigilance of the persons on the steamer. If vigilance is proved, an inference of negligence is not to be deduced from the mere fact that a light was not seen, (*The Annie Lindsley,* 104 U. S. 191;) and, if the collision did not result from the negligence of the steamer, there is no liability. But the schooner was in positive fault. She saw the steamer an hour before the collision, and knew that she was approaching her; and was where it was evident that the courses of the vessels crossed each other, and the danger of collision was threatening. She failed to light and exhibit the torch which she kept on board for the very purpose of giving warning under such circumstances. If she had exhibited the torch, it is reasonably certain that a collision could only have occurred by the willful act of the steamer; and her fault is not condoned or mitigated by the fact that her side lights were burning brightly, and the assumption that they could have been and ought to have been seen by the steamer. The law gives her no such discretion, but required her to inform the steamer, in this mode, of her proximity and course; and, if she consciously omitted to do it, the unfortunate consequences of her failure are imputable to her alone.

The libel is dismissed, with costs.