## THE BEATRICE, and six other cases.

District Court, S. D. New York.  June 4, 1924.

Carter, Ledyard & Milburn, of New York City (John M. Lyeth, of New York City), for libelant Gulbenkian.

Bigham, Englar & Jones, of New York City (D. Roger Englar and H. B. Potter, both of New York City), for other libelants.

Duncan & Mount, of New York City (Warner C. Pyne, of New York City), for claimant.

WARD, Circuit Judge.  These seven cases were by order of court consolidated and tried together, and by stipulation of counsel the only question to be raised was the right of the libelants to recover contribution in general average.  There is no substantial dispute about the facts, the question being one of law, viz., whether the fact that the libelants' shipments were damaged by water poured into the hold by the New York fire department prevents them from recovering.

November 3, 1919, about 8 a. m., smoke was discovered coming out of hold No. 5 of the steamship Beatrice, lying at pier 26, Brooklyn, laden with a general cargo from the Orient.  The third officer was then in charge of the steamer, and shortly afterwards the first officer arrived, and ordered the stevedores to remove the hatch covers and pull out the bales of wool and mohair, so as to reach the fire, and he told the chief engineer to notify the office of the A. H. Bull Steamship Company, owner of the steamship, of the fire. Shortly after this message was received, the traffic manager of the company, arriving at the office, called up the fire department, which sent an engine and equipment to the pier, arriving about 9:40 a. m.  The firemen stretched their own line of hose from the city hydrant on the bulkhead to the hold, and the stevedores employed by the claimant broke out bales of wool in considerable heat and smoke, the firemen playing water into the hold whenever necessary.

November 7 at about 5 a. m. smoke began again to issue out of hold No. 5.  The watchman on deck called up the third officer who was in charge, and he summoned the crew to stretch out the steamer's hose, and the watchman called up the fire department.  The latter, arriving before this was completed, stretched their own hose into the hold, and, turning on the water, controlled the fire.

In the afternoon fire was again discovered in No. 4 hold, and was extinguished in the same way.

The stevedores and firemen of the fire department cooperated, and, though the officers and crew of the steamer took no part in the work nor gave any orders, they approved of all that was done.  Indeed, the fire department was sent for that it might pour water into the hold, and no other or better method could have been pursued, and the officers of the steamship acquiesced in all that was done.

The ship was not damaged, the cargo was discharged, and delivered without any average bonds being required.

The A. H. Bull Steamship Company, owner and claimant, contends that there was

no such imminent danger as to justify general average, but it seems quite clear that, if the combustion had been allowed to continue, all concerned in the adventure would have been exposed to loss. It was an impending peril which constituted an imminent danger to the ship and cargo. The Circuit Court of Appeals of this circuit has held removing coal stiffening which had begun to heat but was not on fire to be a general average expenditure in Aktieselskabet Fido v. Lloyd Brazileiro (D. C.) 267 F. 733, Id. (C. C. A.) 283 F. 62. There can be no doubt of the libelant's right to recover if water had been poured into the hold by the officers and crew and the fire department had not been called in.

The claimant next objects that the water was not put into the hold by the order of any one specially intrusted with the care of the ship and cargo. Generally, the master or the officer in charge, in the absence of the master, gives such order, but, when a vessel lies at a wharf in a harbor, the owner certainly can do so personally or by his agents, and so could the corporation claimant or its agents. In this case the first officer, in charge of the steamer, gave notice to the corporation owner, and its agent called in the fire department to assist in extinguishing the fire.

It is also suggested that to justify contribution in general average the shipowner's representative who pours water into a hold containing general cargo to extinguish fire must select the goods he intends to sacrifice. He does, by doing so, select for sacrifice all the goods which shall be damaged by the water. If he had first to specify the particular goods, there could be no equitable adjustment in general average in the case of a general ship.

The real question is whether the situation is covered by the decision in Ralli v. Troop, 157 U. S. 386, 15 S. Ct. 657, 39 L. Ed. 742. Two cases subsequently discussed in that case deserve particular consideration.

Wamsutta Mills v. Old Colony Steamboat Co., 137 Mass. 471, 50 Am. Rep. 325 (1884), is plainly to the effect that a public fire department in taking charge of a ship on fire may act as the agent of a shipowner. Mr. Justice Field, speaking of the chief engineer of the fire department, said at page 473:

"If indeed the fire does not endanger the property of others, he may act merely as the agent of the owner; but, if the safety of other property is imperilled, he must act under his public responsibility. If persons are employed to render a service, the service is paid for by those who employ them, but the members of a fire department in the ordinary performance of their duties are public officers, and are paid by the municipality. It is clear, in the case at bar, that the chief engineer and his men were not employed to extinguish the fire by any person lawfully in charge of the steamship; but that they acted wholly under their public employment. Although what they did was done without objection by the mate, or by the master after he arrived, yet they did not act under the direction of either master or mate. Suppose the chief engineer had brought a libel against the steamship and cargo for salvage, could he have maintained it for services in putting out the fire, without regard to his services in pumping out the steamer after she sank? We think not. The Mary Frost, 2 Woods, 306 [Fed. Cas. No. 3,592]."

Of course, payment of the fire department or a suit by the fire department for salvage would be strong evidence that it was acting as agent of the owner or on behalf of the ship and cargo and not on behalf of the public. But an agency may be gratuitous. If the fire department acts at the request of the shipowner for the purpose of saving a particular ship and cargo and not of other property, it acts as his agents, whether it is paid or not.

In the case of The Roanoke (D. C.) 46 F. 297 (1891) affirmed (C. C. A.) 59 F. 161, the fire department did the first flooding of the hold on May 17 and 19, 1890, when the steamer was at a wharf in Buffalo, apparently without any assistance of the master and crew. Subsequently on the trip from Buffalo to Toledo the fire broke out again and the crew poured water into the hold. Judge Jenkins said at page 300:

"The objection that the act was that of the municipal authorities, without direction or concurrence on the part of the master, is ill sustained in point of fact. The protest discloses that the alarm was given, and the fire department called into action, by the master of the vessel. The action of the firemen was therefore by his procurement. Subsequent flooding was the direct act of master and crew."

Opposite conclusions were reached in these cases, depending, as it seems to me, entirely upon the question whether the fire department was acting for the benefit of the public generally or for the benefit of the particular ship and cargo at the request of the representative of the owner. Mr. Justice Gray in Ralli v. Troop (1895), apparently

approved of both these decisions and explained them on exactly this ground, quoting from the opinion in the Roanoke the very passage I have quoted above. And in referring to the Wamsutta Case, after observing that the chief engineer of the fire department went to the vessel and sunk her entirely on his own judgment, he added the significant language:

"What was done was necessary to extinguish the fire, which, if allowed to burn, would have spread to the neighboring vessels and buildings."

Such I think was not the present case. The peril to the ship and cargo was imminent for the purposes of contribution in general average if the fire were not extinguished, but, as it was easily extinguished by the fire department, and there was not the least danger to other shipping or other property in the neighborhood, no presumption or inference arises, from the facts, that the fire department was acting for the benefit of the public. On the contrary, it seems to me that the natural presumption or inference is that it was acting for the safety of this particular ship and cargo. The last paragraph of Mr. Justice Gray's opinion is as follows:

"In fine, the destruction of the J. W. Parker by the act of the municipal authorities of the port of Calcutta was not a voluntary sacrifice of part of a maritime adventure for the safety of the rest of that adventure, made, according to the maritime law, by the owners of vessel or cargo, or by the master as the agent and representative of both. But it was a compulsory sacrifice, made by the paramount authority of public officers deriving their powers from the municipal law, and the municipal law only; and therefore neither gave any right of action nor of contribution against the owners of property benefited by the sacrifice, but not included in the maritime adventure, nor yet any right of contribution as between the owners of the different interests included in that adventure."

Therefore, I think the ground of the decision in Ralli v. Troop was that the port authorities of Calcutta did not act at the request of those in charge of the vessel or as the agents of the owner but solely in virtue of authority vested in it by law. It seems to be clearly implied throughout these three cases that if the public authorities had been called in for the particular benefit of the vessel and cargo a claim in general average would be sustained.

This is also indicated by the proviso in chapter 553 Laws of New York 1902, entitled, "An Act to amend the Greater New York charter relative to the jurisdiction of the fire department over harbor fires."

This new section gives the fullest authority to the fire department in case of fire on any vessel in the port of New York "to prevent communication thereof to the shipping in said port or to the docks, piers, wharves, warehouses or other buildings or structures bordering upon or adjacent thereto," but expressly recognizes the difference between services rendered to burning vessels and services rendered to property burning on land by the proviso, which reads:

"Provided that nothing in this section contained shall be construed to limit the authority of the master or officers of any such vessel on fire or in danger from fire, subject to the general authority granted herein of the fire department to control the operations in protection of the public interests."

The fair presumption or inference from the facts of the present case seems to me to be that the services of the department were rendered to the Beatrice and her cargo because the ease with which the department extinguished the fire shows that there was no need whatever "to control the operations in protection of the public interests," and I so find.

A further consideration occurs to me. The jurisdiction of the Supreme Court in Ralli v. Troop was restricted to the determinations of questions of law presented by the Circuit Court's findings of fact. Mr. Justice Gray said at page 417 of 157 U. S., 15 S. Ct. 657, 669, 39 L. Ed. 742:

"The case at bar comes to this court by appeal from the circuit court under Act Feb. 16, 1875, c. 77, § 1, by which that court is required to state its findings of facts and its conclusions of law separately, and the jurisdiction of this court is limited to the determination of the questions of law presented by the record. 18 Stat. 315. The findings of facts by the circuit court are conclusive, and cannot be added to or qualified by referring to the evidence taken in the cause, or to the opinion of that court or of the district court. The Annie Lindsley, 104 U. S. 185, 187 [26 L. Ed. 716]; Sun Mut. Ins. Co. v. Ocean Ins. Co., 107 U. S. 485, 500, 1 S. Ct. 582 [27 L. Ed. 337]; The Gazelle, 128 U. S. 474, 484, 9 S. Ct. 139 [32 L. Ed. 496]; The City of New York, 147 U. S. 72, 76, 13 S. Ct. 211 [37 L. Ed. 84]."

And at page 418 of 157 U. S., 15 S. Ct. 657, 669, 39 L. Ed. 742:

"The circuit court, indeed, has found as facts that 'the measures taken by the mate before the port authorities took charge of the ship, and those subsequently taken by the port authorities, were the best available to

extinguish the fire, and to save greater loss upon the cargo.' But it is not found whether the motive and purpose of the port authorities was to save this vessel and her cargo, or to save other vessels and property in the port; whereas, in order to constitute a general average, the sole object of the sacrifice must appear to have been to save this vessel and cargo."

And Mr. Justice Brown in the dissenting opinion said at page 421 of 157 U. S., 15 S. Ct. 657, 670, 39 L. Ed. 742:

"There is in this case a failure to find an important fact, namely, whether the action of the port authorities was taken in the interest of the ship and cargo alone, or in the interest of other neighboring property, exposed to the conflagration."

All of which seems to me to show that the judges in that case were of one mind on the question that general average would arise when the public authorities aided a ship for the benefit of the ship and the cargo as distinguished from public property generally. Such a finding would have been a presumption or inference depending, not upon what this, that, or the other officer of the fire department might say he was intending to protect, but would be a presumption drawn from the proved facts, as it was actually drawn in the three cases cited, as, for instance, what orders were given; what was done; and why it was done.

The presumption or inference I arrive at quite consistently with all three cases is that the assistance of the fire department on these occasions was for the sole benefit of the Beatrice and her cargo.

It was the duty of the shipowners to require average bonds before delivering their shipments to the shippers or consignees and to have a general average adjustment prepared. Heye v. North German Lloyd (D. C.) 33 F. 60, 2 L. R. A. 287; The Allianca (D. C.) 64 F. 871; The Santa Ana (C. C. A.) 154 F. 800. Counsel may submit a decree in accordance with the opinion.