## THE MORAN NO. 16.

District Court, S. D. New York. July 25, 1929.

Bigham, Englar, Jones & Houston and Leonard J. Matteson, all of New York City, for libelant.

Macklin, Brown, Lenahan & Speer and Richard F. Lenahan and Edmund F. Lamb, all of New York City, for respondent.

GODDARD, District Judge. The libelant seeks to recover contribution in general average from the lighter Moran No. 16 and the Moran Towing & Transportation Com-

pany, her owners, for water damage sustained by a portion of her cargo of sugar in an effort to extinguish a fire which occurred on the lighter on April 24, 1922. At the time the Moran No. 16 was under a per diem charter to the Three Star Line, which was also the owner of the steamship Andree. The Moran No. 16 was being used to receive cargo which was being discharged from the Andree, which was made fast to a pier at the Erie Basin, South Brooklyn, in order to permit repairs to be made to the Andree. At the time the No. 16 was lying alongside of the barge Harrington, which in turn was alongside the Andree. The sugar was being transferred across the Harrington to the No. 16.

A few minutes after 8 o'clock on the evening of April 24th a lantern on the No. 16, which was being used for light, exploded; the flames spread quickly, and the sugar started to burn. A hose from the steamship Andree played water on the No. 16 for about 15 minutes, when the municipal fire apparatus arrived. Shortly before its arrival, the lines of the No. 16 had been severed, and she had been gotten away from the Andree and the Harrington, so that, when the fire engines arrived, the No. 16 was out toward the center of the basin. I am convinced from the testimony of a member of the fire department, who was present at the fire, that other craft or property in the vicinity were not seriously endangered, for the Erie Basin is upwards of five blocks long, and there was little or no wind or current at the time, and as further evidence that the fire department did not regard the No. 16 as a danger and were directing its efforts towards the saving of the cargo and the lighter is the fact that one of the fire boats pushed her alongside of the pier so that the land apparatus of the fire department could pour water in to her.

There is some doubt as to just who did summon the fire department. An investigator of the fire department stated that after the first, he interviewed the master of the No. 16, and that he, the master, told him that he turned in an alarm. Upon the trial, the master denied that he either turned in an alarm or stated so. However, this is not important, for the master testified that the Andree, owned by the Three Star Line, blew long blasts on her whistle to summon the fire department, and the No. 16 was at the time in the custody and control of the Three Star Line under a charter which made the Three Star Line her owners "pro hac vice."

For the sake of the record, it must be added that, after the arrival of the battalion chief of the fire department, no orders or directions were given to him by the master of the lighter, or by any one else in her behalf, as to how the efforts to extinguish the fire should be conducted.

In Ralli v. Troop, 157 U. S. 386, at page 418, 15 S. Ct. 657, 669, 39 L. Ed. 742, Mr. Justice Gray stated:

" * * * In order to constitute a general average, the sole object of the sacrifice must appear to have been to save this vessel and cargo."

Again, at page 419 of 157 U. S., 15 S. Ct. 670, 39 L. Ed. 742, he stated:

" * * * The sacrifice must be for the benefit of the common adventure, and of that adventure only, so it must be made by some one specially charged with the control and the safety of that adventure, and not be caused by the compulsory act of others, whether private persons or public authorities."

He also stated at page 420 of 157 U. S., 15 S. Ct. 670, 39 L. Ed. 742,

"In fine, the destruction of the J. W. Parker by the act of the municipal authorities of the port of Calcutta was not a voluntary sacrifice of part of a maritime adventure for the safety of the rest of that adventure, made, according to the maritime law, by the owners of vessel or cargo, or by the master as the agent and representative of both. But it was a compulsory sacrifice made by the paramount authority of public officers deriving their powers from the municipal law and the municipal law only; and therefore neither gave any right of action nor of contribution. * * * "

In The Roanoke (D. C.) 46 F. 297, affirmed (C. C. A.) 59 F. 161, it was held to be a case of general average contribution where cargo was damaged as a result of water poured upon it by the fire department of the city of Buffalo which had been summoned by the master of the vessel for the purpose of extinguishing the fire and upon a subsequent breaking out of the fire and effort to extinguish it was entirely under the master's charge.

In the Minneapolis St. P. & B. S. S. Co. v. Manistee Transit Co. (D. C.) 156 F. 424, 426, Judge Hazel held that the right to general average contribution did not arise where the cargo was damaged by water being poured into a burning vessel by a city fire department acting on its own authority, and not as a result of the act of the master of the vessel or other representatives of the joint enterprise. It is a little difficult to reconcile Judge Hazel's conclusions from the facts with Judge Ward's decision in The Beatrice (D. C.) 36 F.(2d) 99, 1924 A. M. C. 914,

but Judge Hazel does not differ in the rule of law, but merely draws his own conclusions from the particular facts in the case. Judge Hazel, in distinguishing the Minneapolis St. P. & B. S. S. Co. v. Manistee Transit Co., supra, from The Roanoke, supra, states:

"* * * In that case the fire originated on board the vessel, and the District Court found that the master directed the operations of the firemen who were expressly called to help the crew make a sacrifice and save a portion of the endangered cargo. After the fire was thought to have been put out, the vessel departed on her voyage, but the fire broke out at intervals in different portions of the cargo, consisting of jute stowed in the hold, and was only kept checked by the crew through the steamer's hose at each outbreak."

Judge Ward's reasoning and conclusions in The Beatrice, supra, seem to me convincing. He held it was a case of general average where the flooding of the hold of a steamer by a municipal fire department is done at the request and with the consent of the master and owners to save the particular ship and cargo, and not for the safety of surrounding property. In The Northern No. 30 (D. C.) 24 F.(2d) 975, general average was allowed where a city fire department responded to an alarm turned in by the watchman on the dock where the Northern No. 30 was made fast and damage to the cargo resulted from water poured into the barge by the fire department for the purpose of saving the barge and its cargo, and not for the protection of adjacent property and neighboring shipping.

It should be recognized in considering a case of this nature that it would be contrary to the interest of all to unduly discourage the master of a vessel, when his ship and cargo are in danger from fire, because of the fear of technical legal complications, from calling to his aid municipal fire apparatus in his effort to save them; also that those who know them are aware that the average barge master is not a particularly competent or acceptable person to direct the methods of a modern fire department in its efforts to save his ship and cargo, and efficiency is what is wanted at such a time. I think that it is sufficient compliance with the rule that the sacrifice must be under the direction or concurrence of the master, if it appears that the fire department was summoned by him or some one in behalf of the vessel for the purpose of aiding him in saving the vessel and cargo from further damage from fire, unless it appears that the fire department's efforts were not confined to the purpose for which it was summoned. The fire department is voluntarily summoned or procured by him, knowing that it will probably be necessary to have water poured into his vessel and damage some of her cargo for the sake of saving the vessel and the rest of her cargo. In the Star of Hope, 9 Wall. (76 U. S.) 203, at page 233, 19 L. Ed. 638, the court announced that, if the will of man in some degree contributed to the sacrifice, it is all that is required to constitute the voluntary act within the meaning of the commercial law.

It is evident from the principles discussed in the cases referred to above that the mere fact that a municipal fire department is employed to assist in extinguishing a fire on a vessel does not work a forfeiture of the right to contribution in general average, but that whether this right exists depends upon the circumstances under which its aid is obtained, and the purpose for which it is used. In the case at bar, I find that the municipal fire apparatus was summoned by those in charge of the Moran No. 16 to assist them in saving the lighter and her cargo, they voluntarily making use of the fire apparatus and its operators to pour water on to the ship and cargo with the view of sacrificing some of the cargo to water damage for the sake of saving the rest of it; and, further, that the efforts of the fire department were concerned with saving the No. 16 and her cargo, or so much of it as possible, and not with preventing the fire from spreading to other property, as no other vessels or property were in danger. Therefore the case is one for contribution in general average—an instance of a voluntary sacrifice of cargo by those in charge of a vessel for the purpose of saving her and her cargo.

The libelant may have a decree accordingly, with a reference as to damages.