**THE MORAN NO. 16.**

**MALOY v. MORAN TOWING & TRANSP. CO.**

**No. 227.**

Circuit Court of Appeals, Second Circuit.
April 7, 1930.

L. HAND, Circuit Judge, dissenting.

. Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney and Edmund F. Lamb, both of New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

■ If it be conceded, as claimed, that the owner of the Andree was the owner pro hac vice of the No. 16, it by no means is enough to establish that the agent of the owner in charge of the Andree was likewise the agent of the owner in charge of the Moran No. 16. The lighter was presumably in command of the bargee who was on her, and there is nothing in the record to the contrary. The captain of the Andree represented his owners, of course, within the limits of his authority, but there is no evidence tending to show that his authority so to represent extended beyond the Andree to include the No. 16 herself. Granting, then, that the fire department was summoned in part, at·least, by the whistle of the Andree, taken to have been blown by authority of her captain, we are still without proof that it was summoned by any one with authority to act in behalf of the Moran No. 16.

■ The burden resting on the libelant to prove.the right to contribution in general average requires proof which preponderates in favor of the claim that the lighter called the fire department. Otherwise no water damage to her cargo resulting from action by the department can be said to have been caused by the voluntary act of one in command of the lighter. Ralli v. Troop, 157 U. S. 386, 15 S. Ct. 657, 39 L. Ed. 742. Moreover, the libelant may also be bound to prove that the fire department acted solely to save the property in the maritime adventure of which the lighter was a part and not to prevent damage to other property by spreading of the fire, although we do not think on the facts proved that our decision need touch that ground at all. It would come up for consideration only after the voluntary summoning of the department in behalf of the lighter had been shown, and, in the absence of proof of this vital preliminary fact, the claim for contribution must fail anyway. To obtain a general average contribution, there must have been a voluntary sacrifice of part of the maritime adventure in which the lighter was involved made by all of the owners or by some person or persons having authority to act for all of them in that regard. This voluntary sacrifice may have been made by means of the fire department or any other instrumentality, but it must have been the voluntary act of the owners or their representatives. Wamsutta Mills v. Old Colony S. B. Co., 137 Mass. 472, 50 Am. Rep. 325; Ralli v. Troop, supra.

Cases like The Roanoke (D. C.) 46 F. 297, affirmed (C. C. A.) 59 F. 161, The Northern No. 30 (D. C.) 24 F.(2d) 975, and The Beatrice (D. C.) 36 F.(2d) 99, where contribution was decreed, all show that the municipal fire department was summoned by authorized representatives of the entire maritime adventures. The force of the argument that natural justice, on which the right of contribution in general average is founded, requires only that the sacrifice be made successfully for the benefit of all the owners breaks against binding authority that it must be shown to have been the voluntary act of all.

Decree reversed.

L. HAND, Circuit Judge (dissenting).

It ·is the only reasonable inference that the fire department came because of the continued blowing of the Andree's whistle; that was the purpose and the result followed immediately. It makes no more difference that some unknown person turned in an alarm than if the call had been made upon an attendant in an engine-house who relayed it to the chief in charge. While we do not know who gave the order to blow, it is again fair to assume that it was the officer then in command of the ship. At sea the master is always at hand and it may be proper to hold that he alone is charged with the safety of the venture. He ·was not on board, and in port custom allows his absence, if some officer takes his place, who is, I think equally so charged. We should say that on him devolves the duty and the power.

The barge was on demise to the ship's owners; the cargo was only temporarily on board it, having been unladen from the ship to be soon reloaded. It was in the ship's custody and entitled to her protection; the venture included it as much as though it had been in her hold. The ship's officer was, therefore, responsible for it as it lay, unless this duty had devolved solely upon the bargee. I am not sure that my brothers would go so far, but I can see no escape from that conclusion. While we.have held bargees responsible for overloading, and for the use of the lines, I know of no instance which even remotely suggests that where the barge is alongside the ship and subject to her immediate orders, the bargee supplants the ship's officers as to the care of the cargo once delivered. I cannot help thinking that such a result would seem very unreal to seafaring folk.

If all this be true, we have a case where the officer in actual charge of the cargo called in the fire department to save it from destruction. There are indeed expressions in Ralli v. Troop, 157 U. S. 386, 15 S. Ct. 657,

39 L. Ed. 742, which if taken literally would forbid a lien for general average in such a case; but it is never true that a fire department acts only in the interest of the property afire; the fire may always spread, a chance against which they act as much as to preserve what is immediately in danger. To push the rule so far is to deny that there can ever be general average at all, an extreme to which Ralli v. Troop has not been pushed [The Northern No. 30 (D. C.) 24 F.(2d) 975; The Beatrice (D. C.) 36 F.(2d) 99], and which Justice Gray's general discussion forbids. On principle I cannot see why different legal consequences follow from the use of the ship's hose and that of a municipal fire boat, where each is used at the order of the officer in charge. Whatever the historical background of the lien of general average, we ought not ignore the changed situation which modern conditions present. The sacrifice is made for the common venture; it is directed by the person then in control of that venture; it results in a salvage of the whole. These seem to me the outstanding facts, the rest are immaterial details.

It is too late now to raise the appellant's point that no claim can arise in personam. No such assignment of error was made; the case was not tried below on any such theory; it is an afterthought which might have been met, had it been urged in season. I am by no means clear that it would not then have been good, but that is another matter.