JONATHAN GILLETT and others, appellants, *vs.* JOEL ELLIS, appellee.

*Appeal from Cook County Court of Common Pleas.*

Where goods, stowed on the main deck of a propeller, were necessarily cast overboard, in a tempest, by the order of the master, to preserve the vessel and crew, held, that the owners of the vessel were not liable as common carriers. Held, also, that the owner of the goods was entitled to the benefit of a general average.

In adjusting a general average, the owners of the vessel contribute according to the value of the vessel, at the port of destination, and the net amount of her earnings for the voyage. The owners of the cargo saved contribute according to the value of their property, at the port of delivery, deducting the freight due thereon. The price which the goods lost would have brought, at the port of delivery, had the same safely arrived, is to be ascertained, and the freight deducted; and after deducting his proportionate share of the loss, the owner is entitled to receive the balance, in the way of compensation for his loss.

It is the duty of the master to have a general average made, and enforce payment of the portion due on account of the cargo. He has a lien on the cargo, which he may detain until the average is paid. If he neglects his duty, in these respects, the owner of the goods lost may recover from the owners of the vessel whatever he might have received under a general average, fairly and honestly made.

This cause was heard at the February term, 1850, before Spring, Judge, and a jury. The facts of the case are fully stated in the opinion of the Court.

A. HOES and WILLIAMS & BUTTERFIELD, for appellants.

G. MANNIERE and SCAMMON & McCAGG, for appellee.

Opinion by TREAT, C. J.:

This was an action brought by Ellis against Gillett and others, owners of the propeller Cleveland, to recover the value of certain goods shipped on board the propeller, at Chicago, for Macinac, which were never delivered, but were cast overboard and lost in a storm during the voyage. The declaration contained two counts against the defendants, as common carriers; also, a count for general average, and the common money counts. The defendants pleaded the general issue, and gave notice that the goods were shipped on the deck of the propeller, and were necessarily thrown overboard in a storm, for the safety of the vessel and crew.

It appeared on the trial, that the plaintiff, in April, 1848, at Chicago, shipped on board the propeller Cleveland, owned by the defendants, and bound for Buffalo, goods of the value of $158 76, to be delivered at Macinac. These goods were placed on the main deck, between the hatches of the propeller,

and were necessarily thrown overboard and lost in a tempest, by the order of the master, for the preservation of the vessel, crew and cargo. Some other goods were cast overboard at the same time, but neither the quantity nor value was in evidence. Propellers are double-decked vessels, and goods placed between the main and hurricane decks are considered as safe as those stowed in the hold—are, in fact, regarded as under hatches. It is the general custom on the lakes, in reference to this class of vessels, to stow the cargo indiscriminately in the hold and on the main deck, as best suits the convenience of the master. In this respect, no distinction is made in the rates of carriage and insurance. No account of the property lost was ever taken by the master, nor was any general average made by him at the port of destination or elsewhere. The propeller was worth $15,000 ; but it did not appear what was the value of the cargo saved, or the earnings of the vessel for the voyage.

On this state of case, the jury returned a verdict in favor of the plaintiff, for $174 63. The Court refused to grant a new trial, to which the defendant excepted. The Court gave an instruction at the instance of the plaintiff, which is now complained of; but the record fails to show that an exception was taken at the time it was given, and it need not therefore be otherwise referred to or noticed. The defendants prosecuted an appeal from the judgment entered on the verdict.

The defendants were not liable as common carriers. The evidence showed a clear case of a jettison of the goods in question. They were cast overboard by the express directions of the master; and all of the witnesses concur in the opinion, that the sacrifice of the goods preserved the vessel and crew from destruction. The law is well settled, where goods are necessarily thrown overboard in a tempest, to preserve the vessel and crew, that it is a loss by inevitable accident, or, as it is usually termed, the act of God, which excuses the carrier. 2 Kent's Com., 604; Story on Bailments, secs. 525 and 531; Angell on the Law of Carriers, sec. 215.

Are the defendants liable for a general average? It is insisted, that the plaintiff cannot claim contribution, because his goods were stowed on the deck of the vessel. The general rule undoubtedly is, that the owner of goods which are placed on the deck of a ship, and are swept overboard by the action of the

Gillett *et al. vs.* Ellis.

wind or waves, or cast into the sea by command of the master, in order to protect the vessel and crew, is not entitled to the benefit of a general average. The cargo on deck, from its situation, increases the difficulty of navigating the ship, and is more exposed to peril than that which is under cover; and, if swept away or cast overboard, the owner must bear the loss, without contribution from the owners of the vessel and the cargo under hatches. 3 Kent's Com., 240; Smith *vs.* Wright, 1 Caine's Rep., 44; Lenox *vs.* Insurance Co., 3 Johnson's Cases, 178. But this case does not fall within the operation of this rule. Propellers are a class of vessels but recently introduced in the navigation of the lakes, to which, from the peculiarity of their construction, and the general usage respecting them, this general rule is not applicable. They are double-deckers, with two holds. By the general custom prevailing in reference to them, goods stowed on the main deck, or upper hold, are regarded as under hatches, and as safe as those stowed in the lower hold, or where the cargo in ordinary vessels is only considered as under cover. The master is allowed, by this general custom, to stow the cargo either in the hold, or on the main deck, at his convenience. No distinction is made in the price of transportation by the carrier, or in the rates of insurance by the underwriter. The cargo below and between decks is put on the same footing. This universal usage, resulting from the character of the vessel, must govern the rights and liabilities of the owners of the vessel and cargo. The owner of goods, which are stowed on the main deck of a propeller, and necessarily cast overboard by the direction of the master, to preserve the vessel and crew, is, therefore, entitled to the benefit of a general average, as much as the owner of goods that are stowed in the hold would be, under like circumstances.

Where the ship and cargo are saved by the voluntary destruction or abandonment of a portion of the cargo, the owners of the vessel and the residue of the cargo are bound to make contribution to the loser. The loss is incurred for the common benefit of all interested in the ship and cargo, and it ought to be borne equally by them, in the proportion of the value of the property saved. The goods sacrificed are considered as the price of the safety of the vessel, and the remaining cargo. Abbott on Shipping, 344; 3 Kent's Com., 233. In the adjust-

ment of a general average, the owners of the vessel contribute according to the value of the vessel, at the port of destination, and the net amount of her earnings for the voyage. The owners of the cargo saved contribute according to the value of their property, at the port of delivery, after deducting the freight due thereon. The price which the goods lost would have fetched, at the port of delivery, is likewise to be ascertained, and the amount of freight chargeable on them deducted, so that the owner will bear his proportionate share of the loss. In this way, and to this extent, is the owner of the goods sacrificed to be reimbursed for the loss he has sustained. 3 Kent's Com., 242; Abbott on Shipping, 356–8. It is the duty of the master to make a general average, so that those whose property has been saved shall contribute rateably to the owner of the goods which were sacrificed for their common benefit. For the purpose of enforcing the payment of this general average, the master has a lien on the cargo, which he may detain until the average is paid. He cannot be compelled to deliver the cargo either to the owner or consignee, until the amount properly contributable in respect of it is paid, or secured to his satisfaction. 3 Kent's Com., 244 ; Strong *vs.* Insurance Co., 11 Johnson, 324; United States *vs.* Wilson, 3 Sumner, 308 ; Scaif *vs.* Tobin, 3 Barnwell & Adolphus, 523 ; Simonds *vs.* White, 2 Barnwell & Cresswell, 805 ; Hallett *vs.* Bonsfield, 18 Vesey, 187. The plaintiff's goods having been sacrificed for the common benefit of the owners of the vessel and the remaining portion of the cargo, it is very clear that he was entitled to contribution from them. It was the duty of the master to have caused a general average to be made, and enforced the payment of the part due from the owners of the cargo. He was bound to adjust an average, and he had the right to detain the cargo until the average was paid. It clearly results from this obligation of the master to settle an average, and this right to require payment from the consignees, that the defendants, for whom the master was acting, are responsible to the plaintiff. The latter has the right to recover from them whatever he might have received, under a general average, fairly and honestly made. Where the law imposes an obligation on a party, and confers upon him the power of enforcing it, as in this case, by a lien, it equally imposes a liability for the neglect of the obligation. But

Gillett *et al. vs.* Ellis.

it may be said, that there was no tribunal on the lakes, before which an average could have been adjusted, that would bind the parties. Admit that this was so : it neither excused the master, nor exonerated the defendants. The latter were responsible to the plaintiff, in any event, for their proportionate share of the loss. The master, having all of the evidence within his control, should have had a general average settled, upon the principles before stated, by discreet and competent men, selected for that purpose. In most cases, the adjustment of an average, thus made, although not conclusive upon the parties interested, would be readily acquiesced in by them. And, in the absence of fraud, error and unfairness, it would become the proper basis for determining the rights of the parties in any subsequent litigation. The effect of the failure of the master to make an average, and insist on its payment before the delivery of the cargo, may be to embarrass, if not wholly defeat the plaintiff in the collection, except from the defendants, of the sum contributable on account of the cargo. The parties liable for its payment may be insolvent, or domicilled in other states, so that his remedy against them, if subsisting, is not worth pursuing. Reasonable diligence on the part of the master—in other words, the simple performance of his duty—would have avoided all difficulty in the matter. It would be wrong now to permit the defendants to defeat the plaintiff in the recovery of his just share of an average, because their agent, who was bound to make the average, failed to discharge that duty. There is, indeed, some uncertainty in the case, as to the true amount the plaintiff was entitled to receive, in the way of contribution ; but this uncertainty results chiefly, if not entirely, from the negligence of the master. We cannot affirmatively say, that the jury have erred in their assessment of the damages. The plaintiff was clearly entitled to recover from the defendants the price which his goods would have brought at Macinac, if the same had safely arrived there, after deducting the freight thereon from the port of shipment, and his relative share of the loss occasioned by the jettison. We cannot say, that the verdict exceeded the value of the goods at the port of delivery, after making the proper deductions. This is emphatically one of those cases in which every reasonable presumption should be indulged to sustain a verdict. The master had all the means within his control of ascertaining the extent

of the loss, and the amount of compensation the plaintiff was entitled to receive, and it was his duty to have preserved the evidence of these facts for the benefit of all concerned. Omitting to perform that duty, and thereby depriving the parties of the benefit of the evidence, the plaintiff might well be excused for not making precise proof of the extent of his claim.

The judgment of the Court below is affirmed, with costs.

*Judgment affirmed.*