## THE ROANOKE.

### BOTSFORD et al. v. UNION MARINE INS. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. December 1, 1893.)

No. 97.

1. SHIPPING—GENERAL AVERAGE—DAMAGE IN EXTINGUISHING FIRE.
   Damage by water poured on cargo to extinguish fire, by request or direction of the officers of the vessel, is a proper subject of general average. 46 Fed. 297, affirmed.

2. SAME—STATUTORY EXEMPTION.
   Rev. St. § 4282, which exempts the owner of a vessel from liability for damage to cargo by fire happening without his design or neglect, does not release him from liability to contribute towards general average. 46 Fed. 297, affirmed.

3. SAME—EXCEPTIONS IN BILL OF LADING.
   Clauses in a bill of lading, exempting the carrier from liability for any loss or damage arising from fire and wet, and giving him the benefit of the insurance, do not exempt the vessel from a general average claim by the underwriters for damage caused in extinguishing fire, since the bill of lading only affects rights and liabilities incident to the contract of carriage. 53 Fed. 270, affirmed.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

In Admiralty. Libel by the Union Marine Insurance Company of Liverpool, England, the Insurance Company of North America, and the Atlantic Mutual Insurance Company of New York against the steamer Roanoke, W. F. Botsford, C. D. Thompson, and James W. Martin, claimants for contribution in general average. Exceptions to the libel were overruled, (46 Fed. 297,) and a decree rendered for libelants, (53 Fed. 270.) Claimants appeal. Affirmed.

Statement by SEAMAN, District Judge:

Libel was filed against the steamer Roanoke, by the appellees, as underwriters upon her cargo, claiming general average contribution for sacrifice of cargo under the following circumstances: On the evening of May 17, 1890, while the steamer Roanoke was lying at her dock at Buffalo, and taking on a cargo of merchandise, including a quantity of jute, bound for Toledo, fire was discovered in the midship hold, in some bales of jute. The officers of the vessel gave alarm, which brought the fire department and fire tug to their assistance. The lines were cut, and the vessel removed from her dock, and water poured upon her and into the hold. The fire was apparently quenched about 10:30 P. M., the damage to the steamer being confined to the upper works and main deck; but water was necessarily poured into the hold throughout the night, because of smoldering fire in the jute. On the morning of May 19th, fire again appeared in the jute, and was extinguished by throwing in water for an hour. The steamer departed for Toledo at 3 P. M., the 19th. At intervals on the voyage, and after arrival, during the unloading, up to completion, May 22d, fire was breaking out in the jute, and only kept down, and finally extinguished, by streams of water thrown in, through the steamer's hose, at each outbreak. The damage to the cargo by the water thus employed is undisputed. There was a general average statement, and the libelants paid thereupon, to the cargo owners, respectively, the amounts so adjusted for damages by water, in addition to fire damage. Decree was for libelants thereupon, for the damage by water, $2,505.62, and the owners of the steamer appeal.

The bills of lading for the shipments in question contain provisions as follows: That any carrier or vessel receiving the goods shall not be liable

"for any loss or damage sustained by any person, or any loss or damage to all or any of said property, arising from, caused by, or connected with * * * any peril, danger, or accident of, or incident to, navigation or transportation, * * * any fire, * * * explosion, * * * wet, combustion, heating, * * * nor shall there be any liability * * * for any loss or damage herein mentioned, unless the same affirmatively, and without presumption, be proved to have been caused by the negligence of the person, party, or vessel sought to be made liable;" and, further: "Whenever any liability for loss of or damage to all or any of said property shall arise, that person, or party, or vessel then engaged in the actual carriage, or having custody, of the property, shall be deemed the carrier, and be solely liable for such loss or damage, and the person or party liable, or who might sustain loss in consequence of owning * * * such vessel, shall have any insurance, however effected, on, as to, or covering the property lost or damaged, and all benefit and advantage to be derived therefrom."

George D. Van Dyke and P. H. Phillips, for appellants.
John C. Richberg, for appellees.

Before WOODS, Circuit Judge, and BAKER and SEAMAN, District Judges.

SEAMAN, District Judge, (after stating the facts.) Against the allowance of general average in this case, and especially against recovery by the insurers, the appellant raises four points of objection, which were clearly presented and ably argued. They are of importance to the various shipping interests, in some respects, at least, not settled by precedents, and will be considered under the following inquiries: (1) Independent of statute or contract, do the facts make a case for general average? (2) Does the statute—section 4282, Rev. St. U. S.—apply to general average contribution? (3) Do the exemptions from liability contained in these bills of lading save the carrier from such contributions? (4) Is general average liability included in the clause giving the carrier the benefit of shipper's insurance?

1. The question which must be determined primarily is whether the destruction of property on shipboard, by water pumped or poured onto it, through the hatches or otherwise, to rescue ship and cargo from peril by fire, constitutes such sacrifice of a part for the whole adventure as will meet the requirements for general contribution. The conceded facts here show a common peril; and the saving flood of water, although furnished by the fire department of Buffalo at the first outbreak of the fire, was invoked by the officers of the vessel, and, at the subsequent appearances, was entirely under their charge. Vessel and remaining cargo were saved, but at the expense of destruction by water of the portion of the cargo for which contribution is claimed. The district court held that it was a case of general average, and the opinion there filed—reported in 46 Fed. 297—well states the grounds for so holding, and the authorities in support, and is adopted here for answer to the first question.

2. The next inquiry—whether section 4282, Rev. St., exempts the vessel from contribution in such case—does not appear to have been raised heretofore in the courts of this country. This statute was first enacted in 1851, and now appears in the Revised Statutes

under the general title of "Commerce and Navigation," and the subtitle of "Transportation of Passengers and Merchandise." It provides as follows:

"No owner of a vessel shall be liable for, or make good to any person any loss or damage which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board of any such vessel, by reason or by means of any fire happening to or on board the vessel unless such fire is caused by the design or neglect of such owner."

It is evident, from the provisions in pari materia with this, that the legislative intent was to relieve the carrier from a liability which had theretofore entered into the contract for carriage of goods. This object is recognized in Moore v. Transportation Co., 24 How. 1, and the opinion states: "The decision in the case of The Lexington, which was burned upon Long Island sound, led to this act of 1851,"—referring to New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. 344, where the carrier was subjected to liability for a loss of goods by fire in transit, under the rule at common law. By that rule the carrier became absolutely responsible for the safety of the goods intrusted to him for transportation, excepting only for acts of God or the king's enemies. The liability as an insurer, which was thus imposed by the common law, had proved onerous and discouraging when applied to cases of loss by accidental fire, and relief had been extended in England by statute; this similar enactment followed here. Both the circumstances and the context show that this provision was intended only to affect the contract for carriage, so that this insurance against loss by fire should no longer be implied as a part of that contract.

The rule for contribution in general average is older than, and entirely aside from, the common law; is a rule both of equity and policy, which has come down through the centuries from an old Rhodian law, adopted in the Roman jurisprudence, and thence entered into the general maritime law. It appears to have been preserved in England without enforcement by statute. It applies only to shipping, and prescribes that in all cases of imminent peril to the whole adventure, where release is obtained by intentional sacrifice of any part for the benefit of the residue, contribution shall be made by the saved portions for that which was so sacrificed. The common peril takes from the master of the vessel his paramount obligation to his vessel owners, and charges him with a joint agency for the owners of cargo and vessel, to act impartially, decide when a sacrifice is necessary, and select for sacrifice that which will best serve the interest of all to avoid the peril. This general average contribution is not dependent upon contract, but is "built upon the plainest principles of justice," (3 Kent Comm. 233,) and is aside from contract, (The Eagle, 8 Wall. 23:) "It is the safety of the property, and not of the voyage, which constitutes the true foundation of general average." Insurance Co. v. Ashby, 13 Pet. 331. The vessel is made to contribute, as well as the cargo saved, not because of its undertaking to carry, or out of any duty as carrier, but because it had encountered peril, and had been saved to the owners by a sacrifice of other property.

It therefore appears that the adoption of this statute, which is now invoked to relieve the vessel from contribution, found in force these well-known rules, in no respect dependent upon each other, and of separate origin,—the one from the common law, and the other from the maritime law. That from the common law was harsh, imposing upon the contract of carriage an absolute insurance against loss by fire, and clearly within the legislative view for relief; the other, for general average, was an ancient rule of the highest equity, not touching that contract, but applicable only to an emergency of great peril to the whole adventure,—a rule of mutual benefit and value, protecting vessel and cargo when peril arose. The statute makes no mention of general average. The legislative intent was clear to relieve the carrier from the onerous contract liability, for the encouragement of vessel interests; and that intent furnishes the key to the meaning of the statute, unless its language is so broad and unmistakable that it cannot be limited to that purpose. The appellants' contention is that the terms here employed—that the owner "shall not be liable to answer for or make good" any loss or damage which may happen to merchandise "by reason or by means of any fire," in the absence of negligence—must be held to include this damage by wetting of the goods; that, although general average is not allowed for damage by fire, it is here given for the wetting, which was "by reason" of the fire, and its direct consequence; that the uniform rule of construction which has been applied to policies of insurance against fire, to cover such damage by water as well, must govern here. The basis for general average allowance constitutes the distinction. It is not predicated upon any accidental damage or loss; it is not an indemnity for particular goods from any peril or loss by fire, and cannot arise if the peril is only of this portion, and not common, but accrues only in the case of a voluntary sacrifice of a portion to release the whole adventure from peril of storm, fire, or other stress,—and the sacrifice may be made by jettison, stranding, scuttling, or, as here held, by pouring in water; and contribution is charged upon the beneficiaries as such, whether cargo or vessel, or both. The peril is often such that the vessel must be the subject of sacrifice, either in whole or partial, or must incur extraordinary expense to save the cargo or residue, and then its owner receives the general average contribution. Surely, it cannot have been intended that the vessel should retain this benefit without sharing its burdens. We are of opinion that the general words of this statute do not warrant a construction which would disturb these just and valuable rules, which would tend to discourage impartial conduct by the master in cases of peril, and that this statute does not affect general average.

The courts in England have so construed the parent statute in recent decisions. Schmidt v. Steamship Co., 45 Law J. Q. B. 646; Crooks v. Allan, 5 Q. B. Div. 38, 4 Asp. 216. Counsel for appellants urge that these decisions should not be taken as precedents here, because the English courts have administered this statute "with tight and grudging hand," while the courts of this country have uniformly pronounced for its liberal construction. The cases cited

in support of that contention do show that courts there have taken this different view of the statute; but it does not appear to have affected the opinions above cited, and their reasoning is clear and satisfactory to the conclusion here reached.

3. The bill of lading in question contains a clause that the carriers shall not be liable for any loss or damage "arising from, caused by, or connected with" certain specified causes, among which are mentioned fire, wet, combustion, and heating. This special clause is urged in behalf of the appellants to exempt the vessel from the general average claim in question, while it is conceded that the ordinary terms found in the contract, viz. "to be transported in like good order and condition, dangers of navigation, fire, and collision only excepted," does not so operate. Vide Nimick v. Holmes, 25 Pa. St. 366; Schmidt v. Steamship Co., supra. The enlarged details of this bill of lading are directed to the contract of carriage, as in the simpler form. All of the causes enumerated are risks incident to the carriage by water or rail intended by this instrument. General average has an entirely different basis, and is aside from the contract relation for carriage, as shown under the preceding point; and the terms here employed do not warrant a holding that it was in the minds of the parties to this contract of affreightment as touched thereby. The definition adopted in the English cases, under similar special clause,—Crooks v. Allan and Schmidt v. Steamship Co., supra,—is appropriate here, viz.:

"The office of the bill of lading is to provide for the rights and liabilities of the parties in reference to the contract to carry, and is not concerned with liabilities to contribute in general average."

4. The stipulation in the bill of lading which gives to the carrier the benefit of insurance must have similar construction, and be held to cover only liability and damage contemplated by the contract to carry the goods. The issue here being upon the allowance of general average, the discussion in Phoenix Ins. Co. v. Erie & W. Transp. Co., 10 Biss. 18, and Id., 117 U. S. 312, 6 Sup. Ct. 750, 1176, has no application, as the only contest and ruling there was against recovery of damages for which the carrier would have been liable as such, but for similar stipulation in that bill of lading. That case has, however, in its facts, some significance in support of the view here adopted, for it is conceded in behalf of appellant that the insurer there had judgment against the vessel owners for general average contribution by the insured cargo, although it may not be accepted as a clear precedent upon that point, in the absence of a showing of dispute of this liability by the distinguished counsel there engaged.

The decree of the district court is affirmed.