## THE SANTA ANA.

### (Circuit Court of Appeals, Ninth Circuit.	June 7, 1907.)

### No. 1,367.

1. SHIPPING—GENERAL AVERAGE—EFFECT OF STIPULATIONS OF BILL OF LADING.
   While the parties to a shipping contract may by clearly expressed terms either enlarge or limit the carrier's liability in respect to general average, it is the settled rule that stipulations in bills of lading, exempting the carrier from liability for damage or losses arising from certain specified causes, do not affect his liability in general average contribution, although the loss may occur from one or more of the excepted causes.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 623.
   General average, see note to Pacific S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 357.]

2. SAME—LIABILITY OF VESSEL—FAILURE TO ENFORCE LIEN.
   If a master fails to retain the lien which by law he has on the goods of all shippers for their just proportion in a general average contribution, and delivers the goods without requiring payment or a general average bond or other security for the payment thereof, he and the shipowner become personally liable for the full amount of the general average contribution, which all interests should pay to the persons suffering loss.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 624.]

3. SAME—ADJUSTMENT—VALIDITY.
   An adjustment in general average, made by an adjuster selected by the vessel, on proofs submitted by all parties, held not impeached by the vessel owner for fraud.

4. SAME—SUIT TO ENFORCE AWARD—ISSUES.
   Where a libel was filed to enforce a general average award made by an adjuster, and only asked for a readjustment in case objections made to the validity of the award by defendant should be sustained, the libelant cannot complain that a readjustment was not made, where such objections were overruled, and the award made by the adjuster accepted.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

In June, 1900, while the steamer Santa Ana was on a voyage from Seattle to Nome with passengers and a general cargo of merchandise, fire broke out in the cargo, and for the general safety it became necessary to pour water and inject steam into the hold to extinguish the fire. After it was extinguished, the hatches were removed, and a portion of the cargo which had been totally damaged was cast overboard. The vessel then proceeded to her destination at Nome, Alaska, where her cargo was discharged. Much of it was found to be damaged by fire, smoke, and steam. A large proportion of the cargo was the property of the appellee, and it consisted of lumber, furniture, bedding, groceries, wines, liquors, cigars, dry goods, gambling appliances, stage scenery, etc., all for the purpose of establishing at Nome a theater and a store and saloon for the sale of wines, liquors, cigars, and gambling appliances. At the time of the arrival of the vessel at Nome, there was no government there, nor any court by which contribution in general average could

have been ascertained or adjusted. After the appellee's cargo had been removed to its warehouse, a survey was made of it by one W. W. Gollin, who was a surveyor for the board of marine underwriters of San Francisco. In making the survey, according to his own testimony and that of W. D. Wood, Gollin acted at the instance of and represented the ship. According to the testimony of other witnesses, Gollin claimed to represent the insurance companies in which the appellee's cargo was insured. The survey, as it appears from the evidence, was superficial and incomplete. A certificate was issued to the appellee showing the total damage to its cargo by fire and steam to be the sum of $3,617.03. On the return of the vessel to San Francisco in October, 1900, the matter was placed in the hands of an average adjuster for adjustment. The adjustment was delayed from various causes and was not completed until December, 1902, In the adjustment the vessel was valued at $90,000, the freight at $1,928, and the cargo at $65,154. The appellee's cargo was valued at $36,192 at its point of destination. The adjuster, after allowing various credits to the vessel, found and assessed the sum of $12,907.04 as the net amount which the vessel should contribute and pay to the appellee after deducting his contributory share. The appellee demanded of the owners of the vessel the payment of their contribution so adjusted, but payment was refused, and thereupon the appellee filed its libel praying for a decree that the award of the adjuster be enforced by the decree of the court against the vessel, her tackle, apparel, furniture, etc.

The bills of lading under which the appellee's cargo was consigned contained, among others, the following provisions:

"(a) General average, if any, to be adjusted according to the York-Antwerp rules of 1890.

"(b) It is agreed that no lien shall attach to any of the vessels employed in the performance of this contract for any breach thereof, and such lien is hereby waived.

"(c) It is further stipulated and agreed that in all cases of loss of any portion or the whole of said goods and merchandise, the amount of claims shall be restricted to the cash value of such goods or merchandise at the original port of shipment, and that all claims for either partial or total loss or damage shall be ascertained and adjusted upon the same basis of value.

"(d) In the event that said Seattle & Yukon Transportation Company shall become liable for any injury, damage or loss to said property, it shall receive the benefit of any insurance thereon in favor of the shipper, owner or consignee."

The District Court held that these provisions of the bill of lading had no relation to the question of the liability of the ship in general average, and on exceptions to the answer ruled out all defenses based thereon. Upon the final hearing a decree was entered for the appellee enforcing the adjustment made at San Francisco, whereby general average contribution was awarded to the appellee in the sum of $12,907.04.

Nathan H. Frank, H. S. Griggs, and Peter & Powell, for appellant.
William H. Brinker, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended that by the provisions of the bills of lading the entire question of general average as set forth in the York-Antwerp rules of 1890 is incorporated in and made a part thereof, and that the provisions of the bills of lading which are set forth in the foregoing statement of facts should have been given full force and effect, and should have been held to qualify the liability of the ship in general average. To this it is to be said that, while the parties to a shipping contract may by clearly expressed terms either enlarge or limit the carrier's liability

154 F.—51

in respect to general average, it is the settled rule that stipulations in bills of lading exempting the carrier from damages or losses arising from certain specified causes do not affect his liability in general average contribution, although the loss may occur from one or more of the excepted causes so specified.

In Carver's Carriage by Sea, § 80, it is said:

"The shipowner's obligation to contribute to general average sacrifices of the cargo, made during the voyage, will continue, notwithstanding general words in the bill of lading which may seem wide enough to exclude that liability. If the liability is not to exist, that must be stipulated in express terms."

In Crooks v. Allan, 5 Q. B. D. 38, Lush, L. J., said:

"The office of the bill of lading is to provide for the rights and liabilities of the parties in reference to the contract to carry, and is not concerned with liabilities to contribution in general average, and, unless the contrary appears, the words used must be so construed."

The same was held in Schmidt v. Royal Mail Steamship Co., 45 L. J. Q. B. 646. In The Roanoke, 59 Fed. 161, 8 C. C. A. 67, the Circuit Court of Appeals for the Seventh Circuit, following the cases just cited, held that the clause in a bill of lading exempting carriers from liability for any loss or damage arising from fire and wet, and giving him the benefit of the insurance, affected only rights and liabilities incident to the contract of carriage, and that they do not exempt the vessel from a general average claim for damage caused in extinguishing fire. We find no case holding to the contrary of this doctrine, and we find no error in its application by the court below to the provisions of the bills of lading in the present case.

It is contended, further, that, if the adjustment be conceded to be the basis of the appellee's right, the court nevertheless erred in entering a decree against the appellant for the entire amount to be contributed to the appellee, instead of for the ship's individual proportionate contribution. It is well settled, however, that if the master fails to exercise the lien which by law he has on the goods of all shippers for their just proportion in the general average contribution, and delivers the goods without requiring payment or a general average bond or other security for the payment thereof, he and the shipowner become personally responsible for the full amount of the general average contribution, which all interests should pay to the persons aggrieved. Carver's Carriage by Sea, § 442; Dike v. Propeller St. Joseph, 6 McLean, 573, Fed. Cas. No. 3,908; Heye v. North German Lloyd, 33 Fed. 60, 2 L. R. A. 287; The Allianca (D. C.) 64 Fed. 871; Crooks v. Allan, 5 Q. B. D. 38.

The appellant seeks to excuse itself from liability to contribute the whole amount on the ground that an average bond was impracticable, and that all reasonable efforts were made to adjust the damage by such means as were at hand, and to obtain such security as was practicable. But the record is barren of evidence to sustain this contention. We find nothing in the testimony to show that a general average bond was demanded, or that security could not have been obtained as a condition for the delivery of the goods. The cargo was of considerable value, and it is not to be assumed, in the absence of proof, that the

consignees were unable to furnish security. In order to preserve its lien, it was not necessary for the ship to retain the cargo on board. Wellman v. Morse, 76 Fed. 573, 22 C. C. A. 318. It appears from the evidence that the appellant had a warehouse at Nome in which it could have stored the cargo without relinquishing its lien for general contribution.

It is urged that the appellee should be limited to the recovery of $3,-617.03, the amount of its loss as estimated by Mr. Gollin, and it is argued that fraud sufficient to impeach the adjustment is indicated in the fact that the appellee took away its goods without making any protest against that estimate, and soon thereafter presented to the appellant an affidavit showing its damage to be only one-half of the amount subsequently claimed; and, again, two years later, presented a supplemental affidavit increasing its damage to nearly $20,000. But these facts are not necessarily indicative of fraud. The examination by Gollin was cursory and incomplete. He did not attempt to make an adjustment in general average. The certificate was never accepted by the appellee. The evidence shows that the extent of the appellee's loss was not then known even to the appellee's agent, and was not ascertained or ascertainable until a date considerably later. The facts attending the adjustment and the method pursued in arriving at the award present nothing to discredit the result. After the ship returned from Nome, she went to San Francisco, and there the appellant selected C. W. Gibbs, an adjuster of marine losses, to make an adjustment in general average. The insurance companies to which the appellee had made its proofs of loss presented the proofs to the adjuster. The appellant also submitted proofs. The adjuster called on both parties for additional proofs, which were furnished, and upon such evidence the adjustment was made. We find no error in the conclusion reached by the trial court that the adjustment is not impeachable for fraud.

The appellant further objects to the award so made, in the adjustment at San Francisco, on the ground that the testimony shows that a large portion of the goods that were allowed to participate in the general average were injured by fire and smoke, and that the fire and smoke damage, which is not allowable in general average, was not segregated from the damage from steam and water. In the record which is before us we do not find that the appellant has presented any evidence on which to base this objection. Its only testimony as to damage by fire is that found in the deposition of Gollin. He, in answer to the question whether the appellee's goods showed scorching or other effects of fire, answered: "There was a great deal of damage done by steam. Q. Outside of steam? A. There were signs of scorching there." If any considerable portion of the damage allowed in the adjustment was the direct result of the fire, the appellant had it in its power to prove that fact. The appellee, in consequence of its understanding that the District Court had ruled on exceptions to the answer that the adjustment was not binding upon either party to the suit, took testimony in full and in detail as to the nature, cause, and extent of the injury to its goods, as a basis for a new adjustment which it expected the court to make. The appellant now points to items of fire damage which that testimony discloses, and on that bases its present contention; but an

examination of that evidence leads to the conclusion that the fire damage was proportionately inconsiderable. We have no ground for saying that the adjustment made in San Francisco was based in any degree whatever on damage from that source, and, as the evidence of the damage to the appellee's goods so taken at length and uncontradicted shows a general damage largely in excess of that found by the adjuster, we are justified in assuming that the adjustment was made as it should have been made, on damage from steam and water only, and on a proper consideration of the law and rules applicable to such adjustments.

The appellee, although it has not appealed from the decree, contends that, since the court below held that the adjustment was not binding upon either party, this court should on this trial de novo, upon the evidence which is presented, make a proper adjustment of the loss and assess against the appellant its just contributory share, which share, it is urged, is an amount considerably greater than that assessed by the adjuster. We find that on exceptions to appellant's answer to the libel the court below held that the general average adjustment made in San Francisco was not conclusive, but might on the final hearing be impeached on some of the grounds of error of law or fact alleged in the defense. The appellee in its original libel had alleged the adjustment made in San Francisco and prayed for a decree to enforce it. After the court had so ruled on exceptions to the answer, the appellee, with the leave of the court, filed amendments to its libel, in which, while not attacking the adjustment and award, it prayed that if upon the final hearing the court should find the adjustment defective, incorrect, or in any manner insufficient to bind the vessel and all others concerned, the court upon a proper consideration of all the evidence make a proper adjustment. The court, on the final hearing, having failed to find that the adjustment was open to any of the objections presented by the answer, was not required to make a new adjustment at the instance of the appellant. It was not required to make a new adjustment at the instance of the appellee, for the reason that the latter had not in its pleadings repudiated or attacked the adjustment, but, on the contrary, had sued upon it and had prayed for its enforcement, and had asked the court to make a new adjustment only in case the adjustment sued upon was found to be subject to the objections urged against it by the appellant. Under the issues presented by the pleadings, the appellee must be content here, as in the court below, with the adjustment award.

The decree is affirmed, with costs to the appellee.