### DIBRELL BROS., Inc., v. PRINCE LINE, Limited.

District Court, S. D. New York.
Aug. 26, 1931.

Harry D. Thirkield, of New York City, for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann (by L. De Grove Potter), of New York City, for respondent.

GODDARD, District Judge.

This motion by the libelant presents exceptions by libelant to articles twenty-fourth and twenty-fifth in the answer purporting to set forth two affirmative defenses. The substance of article twenty-fourth is the denial of negligence on the part of the carrier in failing to obtain security from shippers to whom it had delivered cargo subject to libelant's lien for contribution in general average. The defense set up in article twenty-fifth is that the claim was not presented within the time specified in the bill of lading. There are also presented exceptions by respondent to two articles, twelfth and the nineteenth, in the libel; and in addition relief demanded by libelant for respondent's failure to answer some of the interrogatories annexed to the libel.

It appears from the pleadings that on May 22, 1929, libelant shipped on board the respondent's vessel British Prince (a common carrier) 162 hogsheads of tobacco for carriage from Norfolk, Va., to Kobe, Japan. During the voyage a fire occurred on board in the compartment adjacent to the one where the tobacco was stowed. The fire was extinguished by pumping sea water upon it, which found its way into the hold where the tobacco was stored and damaged it. Subsequently, the British Prince arrived at Yokohama and the master noted protest, omitting to mention the fire, but stated that heavy weather had been experienced during the voyage and he feared damage to cargo.

On June 26, 1929, when the tobacco was discharged at Kobe, it is alleged that the hogsheads were observed to be stained by sea water and that when this condition was called to the ship's officers' attention by the consignee, a copy of the note of protest was handed to the consignee. The representatives of the vessel made delivery of the sound cargo without obtaining security or protecting the libelant in its right to general average contribution from the vessel, its pending freight and the balance of the cargo. The libel alleges a general average situation and seeks to hold the vessel for its contribution in general average; also for the contribution which it should have obtained from the sound cargo interests to whom cargo was delivered and from whom no security was obtained.

The respondent does not deny that the libelant is entitled to contribution from the vessel, but denies that it is liable for the amount payable from the other cargo interests on the ground that it was not negligent in failing to obtain security. It also defends on the further ground that the notice clause in the bill of lading was not complied with.

Taking up, first, what is concededly the most important question presented and which is raised by the libelant's exceptions to the respondent's affirmative defense set up in the twenty-fourth article of its answer—that is, whether there is absolute liability on the part of the shipowner to a cargo owner whose cargo has been sacrificed in a general average situation and where the representatives of the vessel deliver the sound cargo to its owners and fail to obtain from them security to cover contributions in general average. Or is respondent liable only in the event "libelant proves it negligently failed to obtain security" as respondent contends?

After quite a careful search and examination of the history of general average, of the cases and other authorities on the subject, I am of the opinion that the carrier submits itself to an absolute liability if its representatives make delivery of sound cargo and fail to obtain proper security for the protection of the lien which the damaged cargo has for contribution in general average. The vessel delivers sound cargo under such conditions at her peril. One of the convincing reasons for regarding the liability as an absolute one is that the vessel herself would be liable for the damage were it not for the fact that she may pass the liability on to others under the rule of general average contribution, and it seems but just to hold that the vessel is not discharged from such obligation until there is substituted an equally good indemnity from the new party. The owner of the sacrificed cargo has a lien upon the other cargo for the amount of its contribution. Dupont de Nemours v. Vance (19 How.) 60 U. S. 162, 15 L. Ed. 584. If the representatives of the vessel destroy the lien by free delivery, the vessel becomes liable. Any other rule would place a heavy burden upon the shipper which, from the nature of the situation, would be difficult for it to sustain, and I think would be contrary to the well-recognized obligation of a vessel to cargo entrusted to her for carriage. In the Santa Ana, 154 F. 800, page 802, Judge Gilbert, writing for the Circuit Court of Appeals for the Ninth Circuit, said: "It is well settled, however, that if the master fails to exercise the lien which by law he has on the goods of all shippers for their just proportion in the general average contribution, and delivers the goods without requiring payment or a general average bond or other security for the payment thereof, he and the other shipowner become personally responsible for the full amount of the general average contribu-

tion, which all interests should pay to the persons aggrieved." [Cases cited.]

In Heye v. North German Lloyd (D. C.) 33 F. 60, at page 70, 2 L. R. A. 287, Judge Addison Brown said: "By the maritime law it is the duty of the master, as the representative of the interests of all, upon the completion of the voyage, to cause an average adjustment to be made, and to hold the cargo until the amount payable by each contributor is paid, or secured by a proper average bond. If this duty is not performed, and the cargo is delivered to the various consignees without requiring payment of their shares, that constitutes a breach of a maritime obligation, for which an action necessarily lies in favor of the persons entitled to contribution against the master, the ship, and her owners, to recover the amount of the average, which the latter were bound to enforce, but did not. 2 Marsh. Ins. 544; Id. (5th Ed.) 433; Gourl. Gen. Av. 433; Dike v. The St. Joseph, 6 McLean, 573 [Fed. Cas. No. 3,908]; Gillett v. Ellis, 11 Ill. 579; Eckford v. Wood, 5 Ala. 136; Strong v. Insurance Co., 11 Johns. 323, 334. The persons entitled to compensation might, indeed, pursue the cargo, or the several consignees, if they could trace them; but the master and owners of the vessel have no right to throw the burden upon those whose property has been sacrificed for the common good. Having improperly and negligently, as respects the libelant, delivered the cargo without exacting contribution, they must respond for the amount, and themselves bear whatever trouble or expense may attend a resort to the various consignees who still remain liable. Such an action, arising from independent acts of negligence on the part of the ship, and from the breach of a maritime duty, is not within the provisions of section 4282, Rev. St."

Judge Ward in The Beatrice (D. C.) 36 F.(2d) 99, at page 102, in a case where water pumped into a vessel to put out a fire damaged some of the cargo, stated: "It was the duty of the shipowners to require average bonds before delivering their shipments to the shippers or consignees and to have a general average adjustment prepared."

See, also, The Allianca (D. C.) 64 F. 871, affirmed (C. C. A.) 79 F. 989; Strang, Steel & Co. v. A. Scott & Co., 14 App. Cas. 601; Gillett v. Ellis, 11 Ill. 579; Scrutton on Charter Parties (12th Ed.) p. 325.

While it is true that in some of the opinions in cases where it was held that it was the duty of the vessel or her representatives to obtain security before delivering cargo subject to a lien in general average contribution it has been said that the carrier is "answerable for its neglect" to obtain security, I believe the word "neglect" was probably used as a synonym for "failure" and not in a technical sense, for this seems to be in accord with the general theory expressed in those cases and with the weight of authority.

That an affirmative defense similar to that alleged in the twenty-fifth article of the answer, and which libelant has excepted to is not good in a suit of the character of the one at bar, has been held in the following cases: The Santa Ana, supra; The Lewis H. Goward (D. C.) 34 F.(2d) 791; The Roanoke (C. C. A.) 59 F. 161; Swift & Co. v. Glasgow Steam Shipping Co. (D. C.) 280 F. 910.

Libelant's exception to the twenty-fifth article in the answer is sustained. The allegations in articles twelfth and nineteenth of the libel, while they may not be material, are not prejudicial. The exceptions to them are overruled.

The matter of the interrogatories has been disposed of by the respondent's consent to answer them.

An order in accordance with the above may be presented upon the usual notice.