Whaley, Judge,
delivered the opinion of the court:
This is a maritime claim and is governed by the rules of the maritime law as accepted and adopted by the courts of admiralty in this country.
The facts show that the vessel was owned and operated by the Government through the War Department. She was a public ship and used for governmental purposes. During the World War all, or most, of the private merchant ships *19 which formerly operated in the Pacific Ocean were taken over by the Government through requisition and transferred to the Atlantic Ocean for the purpose of transporting troops and supplies to the Army in France. This resulted in a shortage, or absence, of all freight space in ships sailing to the Orient.
In December 1918 the Government agreed to transport, without hire, certain goods and chattels of the Red Cross, Philippine Government, and the Manila Railroad to the ports of Vladivostok and Manila on its Army transport, the S. S. Logan. This vessel was carrying supplies to the U. S. Army in Siberia and the Philippines and also certain Army officers and their authorized allowances of baggage. The shipments of goods of the Philippine Government and the Manila Railroad Company were insured by the plaintiff against marine perils. On December 5, 1918, the transport Logan sailed from San Francisco, California, to Vladivostok, Siberia, and the Philippine Islands. After the ship had been at sea for over ten days, a fire broke out in the lower hold no. 1, and, to prevent the loss of the vessel and cargo, it was necessary to flood the hold with water from the deck and through the bilge pipes from the bottom. After the fire, some of the damaged cargo was jettisoned and the voyage was resumed. On December 22, only five days after the resumption of the voyage, fire again broke out in the same hold and was not extinguished until the following day. As a result of this fire, additional cargo was thrown overboard. Upon the arrival of the transport at the ports of destination, her cargo was discharged and the master made delivery to the owners or consignees without taking bonds to secure payment of general-average contributions by said cargo. There was no effort made to libel in rem the ship or cargo. Thereafter the plaintiff paid the Philippine Islands and the Manila Railroad Company the amounts of their respective losses, as due and payable under the policies of insurance, and became subrogated to their rights.
The War Department, acting through the Army Transport Service, employed Johnson & Higgins, average adjusters, on August 22, 1922, to prepare a statement of general average to determine the responsibility of the vari *20 ous parties. The general-average statement was completed and issued by these adjusters on December 31, 1926, and showed the ship and cargo owned by the Government should contribute to the loss sustained through the destruction of the part of the cargo owned by the Philippine Islands and the Manila Railroad Company in the sum of $42,185.69.
The plaintiff, having paid the loss under the marine-insurance policies as an underwriter, brings this suit to recover from the defendant the contribution the ship and cargo owned by the Government should make in general average. Liverpool & Great Western Steam Company v. Phenix Insurance Co., 129 U. S. 397; Wager v. Providence Ins. Co., 150 U. S. 99; International Navigation Company v. Atlantic Mutual Insurance Company, 100 Fed. 304.
The defense interposed by the Government is (1) that the cause of action accrued upon the arrival of the vessel at the port of destination on January 19, 1919, and suit was not commenced until February 18, 1929, and (2) that the transport Logan, being a public ship devoted to military service, the rule of general average is inapplicable.
This is an action in personam and not an action in rem. There was no attempt to libel the vessel or cargo owned by the Government. There has been no interruption by any process issuing from a court of admiralty to the freedom of action of the transport. No act of sovereignty over this ship has been touched. No process could issue from a judicial tribunal which could affect the movements of this instrumentality of the National Government. Briggs v. Light-Boat Upper Cedar Point, 93 Mass. Reports, 11 Allen, 157. See also Workman v. New York City, 179 U. S. 552; Ex Parte in the matter of the State of New York et al., 256 U. S. 503, and cases cited. It is important that this fact should be borne in mind while considering the legal questions involved. The material facts are not in dispute. The language in which some of these facts are expressed seems to occasion a slight dissension.
The defendant asserts that this court is without jurisdiction, for the reason the petition was filed more than six years after the arrival of the vessel at Manila; in other *21 words, that the cause of action to collect contribution in general average accrued upon the arrival of the vessel at the port of delivery of the cargo and not upon the completion and issuance of the general-average statement made by the owners of the vessel. There is ample authority that were this a private merchant vessel a libel in rem could have been commenced against the ship by the cargo owners and by the ship owners against the cargo for contribution in general average upon arrival at destination. Dupont v. Vance, 19 How. 162; Wellman et al. v. Morse et al., 76 Fed. 573.
Under the admiralty law it was the duty of the master to take security bonds from the cargo owners for general-average contributions before delivery of the cargo to owners or consignees. The Santa Ana, 154 Fed. 800.
The master of the Logan did not require the execution of bonds. Bonds are taken in order to prevent the tying up of either ship or cargo and to forego the legal entanglements resulting from libels in rem. It is fair to assume that the master of the transport was aware that no libel in rem against a public ship could issue from an admiralty court. The plaintiff commenced this action in personam seasonably from the issuance of the general-average statement which the Government made, but the action would be beyond the limitation of time for the commencement of a suit in this court if the time commenced to run from the arrival of the ship at Manila. The jurisdiction of this court depends upon which date the claim first accrued. As there could be no attachment of the ship for the purpose of enforcing a lien for contribution in general average, there could only remain the liability of the ship and cargo for general-average contribution through the right of action against the owners, if such remedy existed. If the Logan were a privately owned merchant ship, the lien on the ship and cargo would be inchoate until an average adjustment had been made and no action for a general-average charge could be maintained until the general-average statement had been prepared and issued. The Allianca, 64 Fed. 871.
The Government was in duty bound to have a general-average statement prepared and, in performing this duty, it employed a recognized firm of average adjusters. The length *22 of time taken for the compilation and rendition of this general-average statement is readily explained when the circumstances of this case are considered. The adjusters were the agents of the owner of the ship and were acting for the Government. No action against the owner could be maintained until the liability was ascertained and, as it was the duty of the owner of the ship to the owners of the cargo to have a general-average statement prepared (Johnson & Higgins v. The United States, 287 U. S. 459), until this duty had been performed or a refusal by the owner to perform' this duty, an action in personam would not lie. The general-average statement prepared by the owner is in the nature of an account stated and a right of action accrues from the time of its submission. There are no cases directly in point for-the reason that a lien attaches to private ships and no lien attaches to public vessels and this lien takes hold upon the arrival at destination. We have been unable to find a case where an action in personam was commenced upon the arrival of a ship at destination. As an action in rem gives a lien on the ship and cargo and an action in personctm gives no such lien, the former is always employed to gain the advantage of security for payment of the loss or damage. The action in personam relies upon the responsibility of the owner alone.
The defendant relies on the case of Det Forenede Dampskibs Selskab v. Insurance Company of North America, 31 Fed. (2d) 658. We do not consider this case as either controlling or actually bearing on the question here involved. There was no statute of limitations (in admiralty, laches), involved, but solely the question as to what period should govern the value of certain currency mentioned in the bonds given for general-average contribution. The learned judge correctly held that the value was to be fixed at the time the bonds were executed which was upon the arrival of the vessel at the port of destination. What was said about general-average adjustment was merely obiter and had no bearing on the only question involved. In our opinion, the true rule and the only one which appeals to reason and common justice is that set forth in the decisions in The Allianca, supra; Leggett v. 500 Cases of Tomatoes et al., 15 Fed. (2d) 270; *23 The Emilia S. de Perez, 22 Fed. (2d) 585, 586; The Ernestina, 259 Fed. 772, 773; The Santa Ana, 154 Fed. 800, 802.
Tn The Allianca, supra, it was held that no action for a. general-average charge is maintainable until an average adjustment is made, though the lien thereof was previously inchoate.
In the Leggett case, supra, it was held that “ until an adjustment is made, the lien under consideration is inchoate;, it attaches* but its amount cannot be ascertained until adjusted.”
In the De Perez case, supra, it was held that the owner of the cargo had a right in personam against the owner of the ship for his full share of the general-average statement. This case recognizes that there is a lien given by an action in rem which accrues upon arrival of the ship and before-bonds are given in general average, and, in addition, the owner of the cargo also has a right of action in personam-against the shipowner for his full contributive share of what the general-average statement shows when it has been prepared and issued. The right of action in personam accrues upon the submission of the general-average statement which has been prepared by the master (representing the owners) as required by the admiralty law.
• It is our opinion that the plaintiff’s suit in the case at bar is timely, having been commenced within six years required by the statute from the date of the rendition of the general-average statement prepared by the adjusters employed by the defendant.
The important question for decision is the liability of the Government of the United States in general average for a. loss occasioned by the shipment of goods on a ship which is a part of the armed forces of the Government and used solely as a public vessel. No freight money was charged or received by the Government for the carriage of these shipments. Under these circumstances, does the rule of the admiralty law apply, where a clear case of general average is apparent from the facts, were the ship a privately owned merchant vessel ? The fact that the cargo was carried free does not enter into the question of general-average liability. *24 In Gulf Refining Co. v. Universal Insurance Co., 32 Fed. (2d) 555, the Circuit Court of Appeals, second circuit, said: “ It is authoritatively settled that general average depends upon the event of a common sacrifice for the benefit of all who are or may be interested in the voyage — not upon the existence of different contributory subjects. Contribution is a consequence. Neither the absence of a cargo nor the common ownership of vessel and cargo will affect the application of the principle of general average.”
In Montgomery & Company v. Indemnity Mutual Marine Insurance Co., Ltd., 1 King’s Bench 734, 740, the true principle of general average is expressed as follows: “ The object of this maritime law seems to be to give the master of the ship absolute freedom to make whatever sacrifice he thinks best to avert the perils of the sea, without any regard whatsoever to the ownership of the property sacrificed; and, in our judgment, such a sacrifice is a general average act, quite independently of unity or diversity of ownership.”
There are certain requisites to make a case of general average and the Supreme Court in the case of Barnard v. Adams, 10 How. 270, 303, has stated them most clearly as follows:
“ The law of general average has its foundation in equity. The principle that ‘ what is given for the general benefit of all shall be made good by the contribution of all ’ is recommended, not only by its equity but also by its policy, because it encourages the owner to throw away his property without hesitation in time of need.
“In order to constitute a case for general average, three things must occur:
“ 1. A common danger; a danger in which ship, cargo, and crew all participate; a danger imminent and apparently ‘ inevitable ’, except by voluntarily incurring the loss of a portion of the whole to save the remainder.
“ 2. There must be a voluntary jettison, jaotus, or casting away, of some portion of the joint concern for the purpose of avoiding this imminent peril, periculi imminentis evitcmdi causa, or, in other words, a transfer of the peril from the whole to a particular portion of the whole.
“ 3. This attempt to avoid the imminent common peril must be successful.”
*25 In the Star of Hope case, 9 Wall. 203, the vessel was stranded for the purpose of saving the cargo and crew, and general average was decreed.
All the elements necessary to constitute a general-average case were present in the instant case. The fire on the transport was admittedly and obviously a common danger to ship and cargo; there was a voluntary sacrifice of a part of the cargo, Ralli v. Troop, 151 U. S. 386; the fire was extinguished and, as a result of the sacrifice, the transport and her cargo arrived safely at her destination. The primary element for general average is that there must be a common danger (fire) which threatens the safety of vessel and cargo. The obligations of general average do not arise from a contract of carriage or obligation to pay freight, but from the very fact that cargo is placed in a vessel and both proceed to sea and a common danger is encountered which is successfully avoided by a sacrifice of the interests of one of them. There is nothing unilateral about the doctrine of general average. It applies to both ship and cargo. In the Star of Hope case, supra, the ship was selected for the voluntary sacrifice and the cargo was made to contribute. Had the transport been selected for the sacrifice to save the cargo, the Government, as owner of the ship, could have recovered from the cargo saved its contributory share in the general average. The rule of contribution in general average is clearly set out in The Roanoke case, 59 Fed. 161, 163, as follows:
“The rule for contribution in general average is older •than, and entirely aside from, the common law; is a rule both of equity and policy, which has come down through the centuries from an old Rhodian law, adopted in the Roman jurisprudence, and thence entered into the general maritime law. It appears to have been preserved in England without enforcement by statute. It applies only to shipping, and ■prescribes that in all cases of imminent peril to the whole .adventure, where release is obtained by intentional sacrifice of any part for the benefit of the residue, contribution shall be made by the saved portions for that which was so sacrificed. The common peril takes from the master of the vessel .his paramount obligation to his vessel owners and charges him with a joint agency for the owners of cargo and vessel, to act impartially, decide when a sacrifice is necessary, and •select for sacrifice that which will best serve the interest of *26 all to avoid the peril. This general-average contribution is not dependent upon contract, but is £ built upon the plainest principles of justice ’ (3 Kent Comm. 233), and is aside from, contract (The Eagle, 8 Wall. 23) : ‘ It is the safety of the property, and not of the voyage, which constitutes the true foundation of general average.’ Insurance Co. v. Ashby, 13 Pet. 331. The vessel is 'made to contribute, as well as the cargo saved, not because of its undertaking to caPry, or out of amy duty as earner but because it had encountered peril and had been saved to- the owneo-s by a sacrifice of other-property.” (Italics ours.)
The fact that the Government received no freight hire for-the cargoes of the respective shippers has no bearing on the question as to the liability of the ship to contribute in general average where a part of the cargo has been sacrificed to save-both the ship and cargo. The obligation to contribute does not arise out of the contract of carriage but from participation in the common venture. A clause in a bill of lading providing that goods are carried at owner’s risk does not bar-contribution in general average. Swift & Co. v. Glasgow Steamshipping Co., 280 Fed. 910. See also Dibrell Bros., Inc., v. Prince Line, Ltd., 58 Fed. (2d) 959.
In an imminent peril to both ship and cargo, a part of the-cargo was destroyed by the flooding of the hold of the trans-. port Logan and the Government, as owner of the vessel,, benefited by this sacrifice in the saving of its vessel and cargo, which otherwise would have been destroyed in whole or part.
The liability of the Government, as owner of the transport, for its contributive share in general average is clear. Ke-peatedly has the Government been held liable in general-average contribution for goods belonging to the United States shipped on a merchant vessel. Brown v. United States, 15 C. Cls. 392; The Davis, 10 Wall. 15; United States v. Wilder, Fed. Cases, no. 16,694.
In the Workman case, supra, at page 573, the court said:
“ The prerequisite in admiralty to the right to resort to a libel in personam is the existence of a cause of action, maritime in its nature.”
From the time the sacrifice was made and the ship arrived safely at the port of destination there was created a cause *27 ■of action, maritime in its nature, and a right to a libel in personam,, cognizable in a court oí admiralty. “By the ^ancient and settled practice of courts of admiralty, a libel ■in personam may be maintained for any cause within their [jurisdiction, wherever a monition can be served upon the libellee, or an attachment made of any personal property or credits of his; * * *.” In re the Louisville Underwriters, 134 U. S. 488, 490. There can be no dubiety that the National Government is exempt from process in all courts. It cannot be sued without its consent. The Government has not consented to be sued for an action sounding in tort, but a claim for contribution in general average is based in equity and not tort. Western Maid, 257 U. S. 419. All the cases from earliest time clearly show that, although there may exist a liability against a public ship for some maritime tort or principle of the admiralty law, nevertheless, there can be no redress because of the sovereign’s exemption from suit. The Siren, 7 Wall. 152; United States v. Wilder, 3 Sumner 308; The Davis, 10 Wall. 15.
In most, if not all, of the cases the courts expressly state the lack of jurisdiction is entirely due because the Government has not consented to be sued. Workman v. New York City, supra. The courts had no jurisdiction over the sovereign, no matter how great was the liability. The Government of the United States has consented to be sued on ■claims in the admiralty law, and in 1887 Congress passed •an act commonly known as the Tucker Act, 24 Stat. 505, 36 Stat. 1136, and by section 145 this court is given juris■diction of
“ all claims founded * * * upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be ■entitled to redress against the United States either in a court ■of law, equity, or admiralty if the United States were suable.” (Italics ours.)
“A liability of the owners in personam, however, is not dependent upon ability to maintain a proceeding in rem because of a maritime tort.” Workman v. New York City, supra.
*28 This is a maritime claim against the United States brought in this court acting as a court of admiralty, and, under the provision of the statute, express jurisdiction is conferred. The Government has waived its exemption from suit and has given its consent to have an action in ‘personam, brought in this court for the redress of any liability not sounding in tort under the admiralty law. See Matson Navigation Company, 284 U. S. 352.
Having found that the Government is liable for general-average contribution, and that this court has jurisdiction, the only remaining question for decision is the amount which the defendant should contribute.
The defendant asserts the Government is only liable, if liable at all, for the actual amount paid by the underwriters-to the insured. The plaintiff claims the full general-average contribution of the amount found due by the Government as. owner of the vessel and part of the cargo as found by the adjusters by reason of the fact that the master failed to take-bonds from the cargo owners, upon arrival at destination,, for their respective shares of the general-average contribution, and therefore the defendant, as the owner of the vessel,, is responsible for the full contribution of all parties.
In the case of The Santa Ana, supra, at page 802, the court said:
“ It is well settled, however, that if the master fails to exercise the lien which by law he has on the goods of all shippers for their just proportion in the general-average contribution, and delivers the goods without requiring payment or a general-average bond or other security for the-payment thereof, he and the shipowner become personally responsible for the full amount of the general-average contribution, which all interests should pay to persons-aggrieved.”
See also Heye v. North German Lloyd, 33 Fed. 60; Det Forenede Dampskibs Selskab v. Insurance Co. of North America, 28 Fed. (2nd) 449; and The Ernestina, supra.
Under the general-average statement, as prepared and issued by the defendant, as owner of the vessel, the contribution payable by the United States as owner of the hull of the Logan was $22,213.88, and as owner of miscellaneous cargo of the War Department $19,971.81, or a total of $42,- *29 185.69. In addition to this amount, the United States is liable for the additional sum of $5,913.11 for the contribution of other parties to the general average, because of the failure of the master to require bonds of the respective cargo owners.
The plaintiff is entitled to recover the sum of $48,099.40. It is so ordered.
Williams, Judge; LittlltoN, Judge; and Booth, Chief Justice, concur.
GkeeN, Judge, took no part in the decision of this case.