## THE WM. J. QUILLAN.

(District Court, S. D. New York. January 29, 1909.)

SHIPPING (§ 193*)—GENERAL AVERAGE.

Spontaneous combustion of cargo of garbage tankage due to the inherent vice or quality thereof. It having been decided by the House of Lords of Great Britain that the owner of cargo of that description is entitled to contribution from the shipowner in such a case, in the absence of a contrary decision in this country, *held* that an exception to an answer alleging such a cause of loss should be sustained.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 193.*

General average, see notes to Pacific Mail Steamship Co. v. New York, H. & R. Mining Co., 20 C. C. A. 357; The Santa Ana, 84 C. C. A. 316.]

(Syllabus by the Judge.)

Carter, Ledyard & Milburn, for libellant.
Horace L. Cheyney, for claimant.

ADAMS, District Judge. The libel herein was filed on behalf of the Atlantic Mutual Insurance Company to recover from the schooner Wm. J. Quillan the amount of a general average contribution, alleged to be due from the schooner by reason of a payment of $6,321.01, the insured value of a cargo of garbage tankage destroyed by fire in January, 1906, while the vessel was on a voyage from Barren Island, port of New York, to Savannah, Georgia. The libel alleges that the sound value of the tankage was $6,157.07 and that it was damaged by water used in extinguishing the fire, so that the net proceeds of a sale of the tankage did not exceed $443, and that the damage thereto and the amount of value sacrificed exceeded $5,714.07. The loss was thus made and the vessel saved, hence it is claimed that a general average contribution became due from the vessel, amounting to about $4,750.

The answer admits the main facts alleged in the libel, the fire in the tankage constituting the vessel's cargo, which it is alleged was the result of spontaneous combustion due to the inherent vice or quality thereof but denies that a case for contribution in general average arose. The answer further alleges that the schooner was considerably damaged by the fire and the measures resorted to for the purpose of extinguishing it, as a result of which the schooner and owners have sustained damages amounting to $1,888.41 for repairs, demurrage, etc., which it claims as a set-off against the libellant's claim.

The libellant excepted to the answer as follows:

"The libellant, the Atlantic Mutual Insurance Company, excepts to the said answer and to the whole thereof, on the ground that the respondent has not set forth in his said answer a valid and legal defense on the part of the schooner 'Wm. J. Quillan' to the libellant's claim for a general average contribution, inasmuch as the only matter alleged as a defense on the part of the said schooner is that the fire which gave rise to the claim was the result of spontaneous combustion, and the fact that the fire that gave rise to the claim was the result of spontaneous combustion does not affect the right of the owner thereof to recover a general average contribution on account of the value thereof sacrificed to save the vessel, freight and cargo from destruction threatened by such fire."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The question to be decided therefore is whether damage caused by spontaneous combustion of cargo due to inherent vice of the goods, is a proper subject for general average contribution.

There is no decision in this country bearing directly upon the point but it has been decided in the case of Greenshields v. Stephens [1908] App. Cas. 431, 10 Mar. Law Cases (N. S.) 597, affirmed by the House of Lords [1908] L. R. App. Cas. 431, that the mere fact of a cargo of coal being naturally liable to spontaneous combustion does not deprive the shippers of their rights to a general average contribution, unless guilty of wrongful or negligent shipment.

The respondent urges that while this decision is entitled to respect and consideration, it should only be followed if correct and it is not correct because not consistent with the principles governing general average.

It is claimed that the ship owner can not recover in general average if the producing peril is due to the negligence of himself or crew and in illustration of the contention, mentions a case of latent unseaworthiness of the vessel and it is argued that the owner can not be guilty of negligence for his failure to discover such defect and yet he would not be entitled to recover in general average. The cases are apparently not analogous. The unseaworthiness of a vessel may be latent, nevertheless it would still exist and go to the root of any question of liability of the vessel, where that feature is in any way involved. The danger from the nature of this cargo always exists, of course, and, though remote, is known to all concerned. There are many kinds of cargo, coal, cotton, hemp and explosives of various kinds, for example, which possess attributes of danger and are liable to create peril to the carrying vessel under conditions which may arise. It can scarcely be deemed that the condition of a vessel having a latent defect is similar to those mentioned, which are well known articles of commerce and constantly being carried, the danger being recognized by the shipper and carrier. A cargo owner does not warrant his cargo against the operation of qualities inherent in their nature, while the ship owner does warrant that his vessel is seaworthy. Instead, therefore, of a situation involving mutual ignorance of the facts, as in the case of the unseaworthiness of a ship through latent defects, there is doubtless a mutual knowledge of the facts concerning the qualities of a cargo to be carried. There is no obligation on the part of the owner of such cargo to warrant against the operation of qualities inherent in its nature, which are probably as well known to one as the other.

Doubtless the owner of a cargo causing fire could not recover directly from the ship owner damage caused by the nature of his cargo, because that is directly covered by Rev. St. U. S. § 4282 (U. S. Comp. St. 1901, p. 2943) which provides:

"No owner of any vessel shall be liable to answer for or make good to any person any loss or damage which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner."

But it does not follow that because one remedy is taken from the cargo owner by statute, that he is thereby deprived of a right of quite

a different character, that of a right to resort to general average, for example. The Roanoke, 59 Fed. 161, 8 C. C. A. 67.

It has been urged that the exclusion of deck loads from general average contribution has a bearing upon this matter, but it is not persuasive. It is based upon the peculiar situation of deck loads, which are held not to be entitled to participate by reason of their liability to be jettisoned, partly because, presumptively, they were carried at a lower rate of freight and subjected to greater risk from perils, but Lord Bramwell said (Wright v. Marwood, 4 Mar. Law Cases [N. S.] 453):

"The reason or principle is perhaps not important. Such is the law."

It is obvious, moreover, that deck loads, if sacrificed, should not participate equally with other interests, not subject to the same degree of peril.

It is also argued that the loss being due to an internal cause, there is not the same right to recover, as where something external has been the producing cause, but it is established that the peril may arise from an internal cause and general average contribution still be required. The Whitecross Wire Co. v. Savill, 4 Mar. Cas. 531; The Rapid Transit (D. C.) 52 Fed. 320; The Roanoke, supra.

In the Greenshields Case, supra, the decision of the lower court was based, by Channell, J. (see report of case on appeal), upon the York-Antwerp Rule, providing:

"Rule 3. Damage done to a ship and cargo, or either of them, by water or otherwise, including damage by beaching or scuttling a burning ship, in extinguishing a fire on board the ship, shall be made good as general average; except that no compensation shall be made for damage to such portions of the ship and bulk cargo, or to such separate packages of cargo, as have been on fire."

The higher courts, however, placed their decision upon broader grounds. Lord Alverstone, in the Court of Appeals, after reviewing the authorities, said (10 Mar. Law Cases [N. S.] 600):

"I therefore come to the conclusion in this case that, the loss having occurred without any negligence on the part of the cargo-owners, their claim to general average is not answered or cannot be resisted by the shipowners merely on the ground of the cargo of coal having ignited spontaneously."

Buckley, L. J., concurred in the opinion of Lord Alverstone, but Kennedy, L. J., discussed the case more fully on the aspect particularly applicable here. He said (page 601):

"Why is it fair or reasonable that because this coal has suffered from spontaneous combustion, and produced the fire, that therefore so much of that coal as has been damaged should not be a subject of general average contribution? It seems to me that when you use the word unfair or unreasonable, you must look at some grounds for finding it fair or reasonable to deprive him of it. Now, on what equitable or moral grounds can it be said that the cargo-owners ought not to have contribution? As between themselves and the shipowners they shipped that which the shipowners knew was liable to spontaneous combustion. So, too, every other shipper of coal on this vessel chose to ship it in a vessel which he might, on inquiry, have found would carry coal, the nature of which is obviously possibly combustible. I cannot see the shippers of this bulk of the cargo were in such a position that anybody could say that in fairness they ought not to receive a general average contribution. Everybody knows what is the nature of coal. It is conceded in this case that there was in fact neither wrongful conduct in a more posi-

tive form, nor wrongful conduct in the form of want of care or negligence on the part of the shipper of that coal in regard to the cargo. We go back, as it seems to me, to the reasoning of Crompton, J., in Brass v. Maitland, 6 E. & B. 470, in which he pointed out very clearly a long time ago the position that might arise if it should be held, or if it ought to be held, that a shipper was liable to another shipper because he shipped hay or cotton apparently in a fit state—not dangerous to the knowledge of shippers or shipowners, but in fact in a dangerous state, as such cargoes may be in to the knowledge of the whole mercantile world that ship goods. He there incidentally says that the true remedy ought not to be found, in his judgment, in the right of one shipper against another, where the hay or cotton has taken fire, but the real remedy is in each person against his underwriters, who ought to be the persons to suffer from such an unexpected occurrence. In my opinion, in a case where there is neither negligence nor positive active wrong on the part of the shipper whose goods caught fire and set fire to others, there is nothing unfair, unreasonable, or inequitable in his retaining his rights with others to general average contribution in respect of such goods as have been sacrificed for the safety of the general average."

Upon the affirmance of this case in the House of Lords, the Earl of Halsbury said (App. Cas. 436):

"I confess myself unable to see any novelty in this case. It is not denied that there was a common adventure or that there was a common danger, that there was a sacrifice voluntarily made for the common advantage of all, and that the circumstances show nothing which should exempt either party from the obligation to make good the sacrifices made for the common advantage of both. In the argument in Johnson v. Chapman, 35 L. J. C. P. 23, 19 C. B. (N. S.) 563, 577, where the judgment was delivered by Willes, J., it was urged that no one can maintain an action for a wrong where he has assented to, or contributed to, the act that occasioned his loss. Here the facts do not raise that question at all; the shipowner is a party to taking in his ship the coal, which it is assumed both parties are equally familiar with, and its liability to spontaneous combustion, and all the other circumstances, climate and quantity and depth of holds, and the peculiarities of the river Hooghly, are equally known to both.

"I am therefore of opinion that this appeal ought to be dismissed, with the usual result as to costs."

The question presented is a novel one in this country and while, upon general principles, it might be doubted if the underwriter of a party who loads upon a vessel cargo of such a nature that an explosion or ignition therefrom occurs, should be entitled to recover contribution from the vessel because of damages due to the nature of his cargo, still, without going to the foundation of the matter, it appearing that the cargo here was sacrificed for the benefit of the vessel, in view of the decision in the Greenshields Case, where the question received the consideration of the learned judges of the highest English courts, I think it should be held that the libellant is entitled to succeed.

The exception is sustained.